## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WILLIAM GREENIER, ET. AL., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CASE NO. _____ |
| | § | |
| FORD MOTOR COMPANY, | § | |
| | § | |
| Defendant | § | JURY TRIAL DEMANDED |

## PLAINTIFFS' ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiffs identified below hereby file the instant Original Complaint and Jury Demand against Defendant Ford Motor Company and respectfully show the Court as follows:

## INTRODUCTION

1.     This case arises out of Ford Motor Company's global marketing and sale of approximately 1.5 Million 2011-2016 Ford Fiesta motor vehicles and 2012-2016 Ford Focus motor vehicles (the "Vehicles"), which were equipped with an unsafe and defective transmission known as the "DPS6 PowerShift Transmission" (the "PowerShift Transmission" or the "DPS6").

2.     Ford Motor Company ("Ford" or "Defendant") sold the Vehicles to the Plaintiffs named herein.

3.     As a result of the plethora of defects plaguing the PowerShift Transmissions in these vehicles, Ford violated its statutory and common law warranty and disclosure obligations for the Vehicles sold or leased to Plaintiffs, each of which was subject to a written warranty issued by Ford. Ford breached its express and implied warranties, violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, committed fraud, and violated various state unfair trade practices acts across the nation, as alleged herein.

1

4.      Plaintiffs generally allege, as more fully set forth herein, that Ford (whether directly or through its authorized repair facilities) failed to repair Plaintiffs' vehicles to conform to Ford's written warranty after a reasonable number of opportunities or within a reasonable amount of time. Moreover, Ford failed to promptly replace Plaintiffs' vehicles or make restitution for those vehicles. Plaintiffs further allege that their vehicles were unmerchantable at the time of sale or lease, and unfit for their intended use, and thereby failed to conform to the representations on the vehicle's label. Plaintiffs also generally allege that Ford concealed one or more known defects at the time of sale (and thereafter), and affirmatively misrepresented the vehicle's qualities at the time of sale, thereby inducing Plaintiffs into the purchase or lease of said vehicles.

5.      The DPS6-equipped Ford Focus and Fiesta vehicles were dangerous to consumers and the public because the defective DPS6 could and did cause such vehicles to lose power unexpectedly while driving (referred to as an "unintended neutral event" or "loss of motive power"); jerk and buck erratically, and otherwise fail in ways that reportedly could and did cause accidents and injuries (even fatalities) (aforementioned problems collectively referred to as "Transmission Defects").

6.      Plaintiffs are informed and believe, and on that basis allege, that Ford knew before the initial launch of DPS6-equipped vehicles, and at all times since, that the defects in the PowerShift Transmission made the vehicles defective and dangerous; furthermore, Ford knew that such DPS6-equipped vehicles did not and could not comply with Ford's warranty obligations or with Plaintiffs' reasonable expectations.

7.      Plaintiffs are informed and believe, and on that basis allege, that Ford told one or more suppliers of DPS6 components that the DPS6 PowerShift Transmissions were dangerously defective and that said defect was irreparable; furthermore, Ford demanded one or more suppliers

compensate Ford for increased warranty costs related to the DPS6. Meanwhile, Ford continued to sell vehicles equipped with the DPS6 PowerShift Transmission.

8.    Plaintiffs are informed and believe, and on that basis allege, that Ford and its suppliers ultimately entered into one or more secret agreements, negotiated at the highest levels of Ford's management, whereby the supplier(s) paid Ford hundreds of millions of dollars for increased warranty costs that Ford incurred due to the DPS6 defects. Despite the payoff Ford received, Ford fraudulently concealed the known defects with the DPS6 from third-parties in the United States (*e.g.*, consumers including Plaintiffs, governmental regulators such as the U.S. National Highway Safety Administration ("NHTSA")) and abroad (*e.g.,* the Australian Consumer and Competition Commission ("ACCC")).

9.    Ford affirmatively misrepresented to Plaintiffs, consumers and regulators that the DPS6's aberrant operations were "normal operating characteristics" and that there was nothing wrong with the transmission, consistent with Ford's secret settlement deal.  To this day, Ford continues to deny the defects in the DPS6-equipped Focus and Fiesta vehicles even though it was forced to admit the contrary in a consent decree in a regulatory proceeding by the ACCC, which is part of the public record of that Australian regulatory agency, and which resulted in Ford paying an (AUS) $10 million penalty/fine for engaging in unconscionable conduct regarding DPS6-equipped Focus and Fiesta vehicles. *See* https://www.accc.gov.au/media-release/court-orders-ford-to-pay-10-million-penalty-for-unconscionable-conduct (last visited February 8, 2022).

10.    Ford's corporate misconduct and fraud are alleged in greater detail below, with specific references to, and quotations from, Ford's own internal corporate documents.

## PARTIES

### GEORGIA PLAINTIFFS

11.     Plaintiff William Greenier (for the purpose of this paragraph, "Plaintiff") is a citizen of South Carolina, who purchased a 2015 Focus VIN 1FADP3E2XFL232837 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

12.    Plaintiff Sherry Grice (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2013 Focus VIN 1FADP3K21DL104083 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

13.    Plaintiff Floyd Grier (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3K23EL323239 in Georgia.  Plaintiff's vehicle

was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

14.    Plaintiff Jacquelyn Griffin (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3F23EL278717 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle

performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

15.    Plaintiff Laura Griffin (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3K21EL202662 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources

touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

16.     Plaintiff Terese Griffin (for the purpose of this paragraph, "Plaintiff") is a citizen of Mississippi, who purchased a 2012 Focus VIN 1FAHP3E29CL266054 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales

brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

17. Plaintiff Dana Griffith (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3F28EL416672 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized

dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

18.    Plaintiff Andrew Grimes (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Focus VIN 3FADP4BJ1DM173416 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that

it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

19. Plaintiff Kimberly Grimm (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2013 Focus VIN 1FADP3F2XDL308133 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden

acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

20. Plaintiff Denise Grizzle (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3F2XEL309252 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would

12

have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

21.     Plaintiff Yvonne Grogan (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3K28EL367138 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount

13

of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

22.    Plaintiff Ann Gunby (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3N28EL152550 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective

14

transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

23.    Plaintiff Enrique Gutierrez (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2016 Focus VIN 1FADP3K266L210646 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

24.    Plaintiff Michael Harbison (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2015 Focus VIN 1FADP3K26FL302810 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.    Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

25.    Plaintiff Donna Hardaway (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Focus VIN 1FAHP3K21CL123491 in Georgia.  Plaintiff's

16

vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.  Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

26.     Plaintiff Sue Hardy (for the purpose of this paragraph, "Plaintiff") is a citizen of North Carolina, who purchased a 2015 Focus VIN 1FAPD3K28FL302601 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle

performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

27.    Plaintiff Tara Hardy (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2013 Focus VIN 1FADP3E23DL167420 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources

touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

28. Plaintiff Stephanie Harlow (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3K23EL214215 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales

19

brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

29.    Plaintiff Richard Harpe (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2013 Focus VIN 1FADP3K27DL344447 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.    Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's

authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

30.    Plaintiff Matthew Harper (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Focus VIN 1FAHP3H27CL319944 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that

it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

31.     Plaintiff Renita Harris (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3F2XEL409903 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration,

22

delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

32.    Plaintiff James Harrison (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Focus VIN 1FAHP3M27CL183997 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would

23

have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

33.    Plaintiff Wanda Harrison (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2013 Focus VIN 1FADP3N22DL368683 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount

of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

34.     Plaintiff Sheila Hawkins (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2015 Focus VIN 1FADP3F22FL381483 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.    Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from

the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

35.    Plaintiff Malisia Hebb (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Focus VIN 1FAHP3M26CL374956 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

36.     Plaintiff Chandra Height (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2013 Focus VIN 1FADP3F21DL175083 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.    Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

37.     Plaintiff Daniel Hellerman (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2013 Focus VIN 1FADP3K29DL166928 in Georgia.

Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

38.    Plaintiff Lionel Henry (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3K28EL257738 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas

28

mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

39. Plaintiff Yvonne Henry (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2013 Fiesta VIN 3FADP4EJXDM191635 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the

following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

40. Plaintiff Shannon Hensler (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Fiesta VIN 3FADP4AJ1EM225792 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales

brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

41.     Plaintiff Carmen Hernandez (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Fiesta VIN 3FADP4EJ1CM220857 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's

authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

42.    Plaintiff Edward Higgins (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Focus VIN 1FAHP3M22CL365574 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that

32

it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above.  At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

43.      Plaintiff Stephanie High (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Focus VIN 1FAHP3K2XCL335631 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.    Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden

acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

44.     Plaintiff Elijah Hill (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Focus VIN 1FAHP3F2XCL430832 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for

it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

45.    Plaintiff Jerry Hirak (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 3FADP4BJ7EM151163 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a

35

reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.    At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

46.    Plaintiff Rebecca Hockaday (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2013 Focus VIN 1FADP3K28DL33975 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.    Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from

36

the defective transmission described above.  At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

47.  Plaintiff Aleisha Holbrook-England (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3F28EL179696 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.  Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.  At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

48.    Plaintiff Joshua Holcomb (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2013 Focus VIN 1FADP3F28DL278775 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.    Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

49.    Plaintiff Emilee Holland (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2011 Fiesta VIN 3FADP4BJ3BM174743 in Georgia.  Plaintiff's

vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.    Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

50.    Plaintiff Karen Holley (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Focus VIN 1FAHP3H28CL117520 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.    Passenger safety, vehicle performance, gas

mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

51. Plaintiff Tammy Holloway (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3K24EL447276 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the

40

following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

52.	Plaintiff Christin Holt (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2013 Focus VIN 1FADP3F2XDL120986 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures

and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

53.    Plaintiff Ire Hornsby (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3N26EL213040 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized

dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

54.    Plaintiff Jada Howell (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Focus VIN 1FHAP3F22CL357553 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had

43

a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

55.    Plaintiff Lisa Hoyak (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Focus VIN 1FAHP3K28CL365923 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration,

44

delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

56. Plaintiff Regina Hudson (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2015 Fiesta VIN 3FADP4AJ8FM132429 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would

45

have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

57.    Plaintiff John Humphrey (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Focus VIN 1FAHP3H23CL260326 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount

46

of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

58.    Plaintiff Larry Hunt (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3K26EL403389 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective

transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

59.   Plaintiff Stacey Husted (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3F26EL215871 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

60. Plaintiff Victor Ilarraza (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2013 Focus VIN 1FADP3F29DL281815 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

61. Plaintiff Sophia Irons (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2011 Fiesta VIN 3FADP4BJ0BM164381 in Georgia. Plaintiff's vehicle

49

was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

62.    Plaintiff James Jackson (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2015 Focus VIN 1FADP3F27FL285669 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.    Passenger safety, vehicle

50

performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

63. Plaintiff Kinderly Jackson (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2013 Focus VIN 1FADP3F2XDL139246 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the

following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

64.     Plaintiff Melanie Jackson (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2015 Focus VIN 1FADP3N22FL354074 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales

brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

65. Plaintiff Michele Jackson (for the purpose of this paragraph, "Plaintiff") is a citizen of Indiana, who purchased a 2014 Focus VIN 1FADP3F2XEL360671 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's

53

authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

66.    Plaintiff Kevin Jenkins (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3K24EL279932 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that

it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

67.     Plaintiff Christy Johnson (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3F27EL447251 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden

acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

68.    Plaintiff Kenneth Johnson (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Focus VIN 1FAHP3F25C1344702 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would

have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

69. Plaintiff Mariah Johnson (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Focus VIN 1FAHP3F25CL426591 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount

of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

70.    Plaintiff Susan Johnson (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Focus VIN 1FAHP3K28CL186121 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from

58

the defective transmission described above.  At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

71.    Plaintiff Teresa Johnson (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2016 Focus VIN 1FADP3F21FL378218 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.    Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.  At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

72.     Plaintiff Kiyoko Johnson-Essley (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2019 Fiesta VIN 3FADP4BJ4KM103793 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.    Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

73.     Plaintiff Laura Jones (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Focus VIN 1FAHP3F22CL117516 in Georgia.  Plaintiff's vehicle

was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

74. Plaintiff Shelby Jones (for the purpose of this paragraph, "Plaintiff") is a citizen of Ohio, who purchased a 2014 Focus VIN 1FADP3K23EL129259 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas

61

mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

75. Plaintiff Tenisha Jones (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3F24EL339105 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the

following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

76.     Plaintiff Danielle Joyce (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3F21EL449173 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.    Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales

brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

77. Plaintiff Michael Kaido (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2011 Fiesta VIN 3FADP4CJ1BM196867 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's

authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

78.     Plaintiff Jesse Kasman (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2015 Focus VIN 1FADP3K21FL302729 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had

a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

79.     Plaintiff Mindy Keene (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3K21EL190111 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration,

delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

80. Plaintiff Brandee Kelley (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Fiesta VIN 3FADP4BJ4CM156172 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would

have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

81.     Plaintiff Jeff Kent (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3F2XEL152791 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a

reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

82.     Plaintiff Sarah Kent (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2011 Fiesta VIN 3FADP4BJ8BM214296 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective

transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

83.    Plaintiff Sam Kercheval (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3K21EL22167 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.    Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

84.    Plaintiff Scott Kingsley (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2013 Focus VIN 1FADP3K24DL254866 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

85.    Plaintiff Stephen Kirby and Dawn Hall (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3F27EL378125 in

71

Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

86.    Plaintiff Stephen Kirby and Dawn Hall (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3F2XEL447180 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety,

vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

87.     Plaintiff Mary Kirk (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Focus VIN 1FAHP3M26CL157312 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources

73

touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

88.     Plaintiff Sandra Kirves (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Focus VIN 1FAHP3N29CL307878 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.    Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales

brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

89.    Plaintiff Julia Kitchens (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Focus VIN 1FAHP3F29CL318295 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.    Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's

authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

90.    Plaintiff Mary Kneiser (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Focus VIN 1FAHP3M26CL209599 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had

76

a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

91.    Plaintiff Alexis Knight (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3F21EL409904 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden

acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

92. Plaintiff Dorothy Laititi (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Fiesta VIN 3FADP4EJ4CM172707 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would

78

have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

93.     Plaintiff Linda Landen (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3N21EL179623 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a

reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

94. Plaintiff Gina Laney (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3F20EL367046 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective

transmission described above.    At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

95.    Plaintiff Neal Lange (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2013 Focus VIN 1FADP3K26DL111725 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.    Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.    At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

96.     Plaintiff Neal Lange (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2016 Focus VIN 1FADP3K27GL385360 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

97.     Plaintiff Jackie Lanier (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3F23EL353397 in Georgia.  Plaintiff's vehicle

was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

98. Plaintiff Jackie Lanier (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3K22EL455330 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas

mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above.  At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

99.     Plaintiff Destiny Laster (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Fiesta VIN 3FADP4EJ3E212844 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.  Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources

touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

100. Plaintiff Joy Lawson (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2015 Focus VIN 1FADP3K29FL281810 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures

and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

101.    Plaintiff Kristi Lawton (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2011 Fiesta VIN 3FADP4FJ2BM168183 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized

86

dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

102.   Plaintiff Tonya Leath (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Fiesta VIN 3FADP4EJ0EM232677 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had

a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

103.    Plaintiff Kasey Leatherwood (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3F26EL165182 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden

acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

104.    Plaintiff Harold Lemley (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3F25EL359637 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would

have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

105.   Plaintiff John Lenz (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2015 Focus VIN 1FADP3F29FL365622 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a

90

reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

106. Plaintiff Cecilia Leon (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3F21EL409871 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective

transmission described above.    At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

107.    Plaintiff Amanda Lewis (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2016 Focus VIN 1FADP3F2XGL335238 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.    Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.    At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

108.     Plaintiff Ella Lewis (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3F22EL233204 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

109.     Plaintiff Randy Lewis (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Focus VIN 1FAHP3K20CL156840 in Georgia.  Plaintiff's vehicle

93

was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

110. Plaintiff Charles Lindsey (for the purpose of this paragraph, "Plaintiff") is a citizen of Indiana, who purchased a 2016 Focus VIN 1FADP3F28GL300536 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle

94

performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

111.    Plaintiff Gerald Lisk (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Fiesta VIN 3FADP4BJ9EM127284 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources

touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

112.    Plaintiff Pamela Long (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Focus VIN 1FAHP3M22CL461608 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures

and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

113.    Plaintiff Rebecca Long (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Fiesta VIN 3FADP4BJ4EM124874 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.    Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's

97

authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

114.   Plaintiff Roby Lrle (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3N21EL179640 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had

a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

115.    Plaintiff Jonathan Lull (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Fiesta VIN 3FADP4EJ2EM199410 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration,

delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

116. Plaintiff Savannah Lumpkin (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3F20EL221889 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would

100

have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

117.    Plaintiff Jamalullah Magee (for the purpose of this paragraph, "Plaintiff") is a citizen of New Mexico, who purchased a 2015 Focus VIN 1FADP3F20FL246888 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.    Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount

of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

118.    Plaintiff Flora Mallory (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3F21EL165994 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective

transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

119.    Plaintiff Flora Mallory (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2016 Focus VIN 1FADP3K29GL313754 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

103

120.    Plaintiff Tara Maloney (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3F23EL221840 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.    Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

121.    Plaintiff Samantha Mandich (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2013 Focus VIN 1FADP3K2XDL207079 in Georgia.

Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.    Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

122.    Plaintiff Nichole Manley (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Focus VIN 1FAHP3H23CL162932 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.    Passenger safety, vehicle

performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

123.    Plaintiff Scott Mann (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3K25EL425383 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources

touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

124. Plaintiff Daisy Manning (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Fiesta VIN 3FADP4BJ9EM159457 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales

107

brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

125.    Plaintiff Bobby and Violet Marchman (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2013 Focus VIN 1FADP3J29DL149094 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's

authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

126.    Plaintiff Angla Marmie (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Focus VIN 1FAHP3J22CL402756 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.    Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that

it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

127. Plaintiff Alecia Marshall (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3F26EL425550 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden

110

acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

128. Plaintiff Ethan Martin (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3F29EL215721 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for

111

it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

129. Plaintiff Tami Massey (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2015 Fiesta VIN 3FADP4AJ5FM202632 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a

reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above.    At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

130.    Plaintiff Shanice Mathis (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2013 Focus VIN 1FADP3F24DL149416 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.    Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from

the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

131.   Plaintiff Maria Matias (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3F29EL367788 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

Case 1:22-cv-00806-CFC   Document 1   Filed 06/17/22   Page 115 of 220 PageID #: 115

132.     Plaintiff Candy Maynard (for the purpose of this paragraph, "Plaintiff") is a citizen of Mississippi, who purchased a 2013 Focus VIN 1FADP3K27DL326496 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.    Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

133.     Plaintiff Christopher and Devon Mccollough (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Focus VIN 1FAHP3F22CL360288 in

115

Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

134. Plaintiff Juanita Mccollum (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3F27EL165739 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle

performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

135.    Plaintiff Wanda Mcdonald (for the purpose of this paragraph, "Plaintiff") is a citizen of South Carolina, who purchased a 2014 Focus VIN 1FADP3F23EL291810 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the

117

following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

136. Plaintiff Brent and Rebecca Mcfall (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3F24EL344966 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales

118

brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above.  At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

137.    Plaintiff Jasmine Mcgurk (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2013 Focus VIN 1FADP3K20DL174433 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's

119

authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

138.    Plaintiff Darlene Mclain (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3N24FL227536 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.    Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that

it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above.  At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

139.    Plaintiff Laura Mcmichen (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Focus VIN 1FAHP3H28CL424637 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden

121

acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

140.    Plaintiff Vanessa Mcnelley (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Focus VIN 1FAHP3N24CL476738 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would

122

have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

141.    Plaintiff David Medlock (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Focus VIN 1FAHP3F29CL473302 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.    Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount

of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

142.   Plaintiff Tim Meek (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Focus VIN 1FAHP3H25CL192059 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective

transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

143. Plaintiff Stephen Michael (for the purpose of this paragraph, "Plaintiff") is a citizen of Washington, who purchased a 2015 Fiesta VIN 3FADP4BJXFM132446 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

144.    Plaintiff Charles Miles (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3E28FL344925 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

145.    Plaintiff Eugenia Miller (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2013 Focus VIN 1FADP3F25DL267216 in Georgia.  Plaintiff's

vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.    Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

146.    Plaintiff Lynda Miller (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Focus VIN 1FAHP3F24CL387394 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas

127

mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

147.    Plaintiff Zachariah Miller (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Fiesta VIN 3FADP4BJ9EM131187 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.    Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the

following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

148.    Plaintiff Brandi Mitchell (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Focus VIN 1FAHP3K22CL292810 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales

brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

149. Plaintiff Rachel Mitchell (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Fiesta VIN 3FADP4B6CM215150 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's

130

authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

150. Plaintiff Chad Monnier (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Focus VIN 1FAHP3H28CL200638 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that

it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

151. Plaintiff Tara Montgomery (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3F29EL298034 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden

132

acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

152.    Plaintiff Patricia Moran (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2016 Focus VIN 11FADP3K2XGL407223 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would

have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

153.    Plaintiff Cathy Morgan (for the purpose of this paragraph, "Plaintiff") is a citizen of Tennessee, who purchased a 2014 Focus VIN 1FADP3F26EL215756 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount

134

of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

154.    Plaintiff Kathy Morgan (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Fiesta VIN 3FADP4EJ5EM200842 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.    Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from

the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

155. Plaintiff Diane Morris (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Focus VIN 1FAHP3F22CL475375 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

156.    Plaintiff Roberta Morris (for the purpose of this paragraph, "Plaintiff") is a citizen of Ohio, who purchased a 2014 Focus VIN 1FADP3K27EL170560 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

157.    Plaintiff Shirley Morrison (for the purpose of this paragraph, "Plaintiff") is a citizen of Ohio, who purchased a 2013 Focus VIN 1FADP3F27DL133257 in Georgia.  Plaintiff's vehicle

was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

158. Plaintiff Lea Morton (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2013 Focus VIN 1FADP3F29DL288358 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas

138

mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

159. Plaintiff Carol Moseley (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3K28EL268318 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the

139

following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

160. Plaintiff Tabitha Moses (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Fiesta VIN 3FADP4BJ0CM145265 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales

140

brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

161.    Plaintiff Donald Motter (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Focus VIN 1FAHP3K21CL360255 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's

141

authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

162. Plaintiff Eric Murphy (for the purpose of this paragraph, "Plaintiff") is a citizen of Illinois, who purchased a 2014 Fiesta VIN 3FADP4EJ2EM162860 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had

142

a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

163.   Plaintiff Victoria Murphy (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2013 Fiesta VIN 3FADP4BJ4DM165097 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden

acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

164. Plaintiff James Neal (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3F29EL221843 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for

144

it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

165. Plaintiff Karen Neal (for the purpose of this paragraph, "Plaintiff") is a citizen of Missouri, who purchased a 2014 Fiesta VIN 3FADP4BJ6EM165409 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount

145

of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

166. Plaintiff Vanessa Nelson (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Focus VIN 1FAHP3F27CL387423 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from

146

the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

167.    Plaintiff Chadwich Neumeier (for the purpose of this paragraph, "Plaintiff") is a citizen of Missouri, who purchased a 2014 Focus VIN 1FADP3K28EL254306 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

147

168.    Plaintiff Carole Newbern (for the purpose of this paragraph, "Plaintiff") is a citizen of Tennessee, who purchased a 2014 Focus VIN 1FADP3F27EL103273 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.    Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

169.    Plaintiff Carolyn Nilson (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Focus VIN 1FAHP3M20CL297937 in Georgia. Plaintiff's

vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.    Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

170.    Plaintiff Tracy Norton (for the purpose of this paragraph, "Plaintiff") is a citizen of Alabama, who purchased a 2013 Fiesta VIN 1FADP3E20GL249390 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.    Passenger safety, vehicle

149

performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

171.    Plaintiff Chris Novak (for the purpose of this paragraph, "Plaintiff") is a citizen of Florida, who purchased a 2014 Focus VIN 1FADP3F2XEL103123 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources

touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

172. Plaintiff Andrew Odum and Andrea Beard (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2013 Fiesta VIN 3FADP4EJ2DM103290 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales

brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

173.    Plaintiff Angel Orsini (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Focus VIN 1FAHP3M24CL224621 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized

dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

174.    Plaintiff Hannah Oswald (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3F29EL202807 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that

it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

175. Plaintiff Russell Parker (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2011 Fiesta VIN 3FADP4CJXBM231907 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden

acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

176. Plaintiff Paul Paton (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3F24EL179436 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for

155

it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

177. Plaintiff Sheila Patterson (for the purpose of this paragraph, "Plaintiff") is a citizen of Pennsylvania, who purchased a 2013 Focus VIN 1FADP3F21DL268170 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount

156

of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

178.    Plaintiff Wendy Payne (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3F29EL387098 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective

157

transmission described above.    At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

179.    Plaintiff Jacqueline Payton (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2015 Focus VIN 1FADP3E29FL304286 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.    Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.    At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

180.    Plaintiff Erik Pehrsson (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2014 Focus VIN 1FADP3F27EL282916 in Georgia.  Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

181.    Plaintiff Tamara Pelfrey (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2012 Focus VIN 1FAHP3H24CC410959 in Georgia.  Plaintiff's

159

Case 1:22-cv-00806-CFC   Document 1   Filed 06/17/22   Page 160 of 220 PageID #: 160

vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s). Plaintiff also reviewed and relied on written express warranties provided by Ford. Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts. Plaintiff's vehicle continues to suffer from the defective transmission described above. At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

182. Plaintiff Jackie Ponthier (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia, who purchased a 2013 Focus VIN 1FADP3F22DL167378 in Georgia. Plaintiff's vehicle was equipped with an optional PowerShift Transmission for which Plaintiff paid an additional $1,095.00 over the manual transmission version. Passenger safety, vehicle

160

performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase the vehicle. Before Plaintiff acquired the vehicle, Plaintiff reviewed and relied on one or more of the following sources touting these features: (a) advertisements and information on Ford's website; (b) online advertisements by Ford; (c) radio and/or televisions advertisements by Ford; (d) sales brochures and marketing literature prepared by Ford; (e) print advertisements by Ford; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from Ford's authorized dealer(s).  Plaintiff also reviewed and relied on written express warranties provided by Ford.  Plaintiff did not know and was never informed by Ford prior to purchasing the vehicle that it had a defective transmission, including that it is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle. Had Ford disclosed this transmission defect, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has submitted the vehicle to Ford and its authorized dealership(s) for repair, but they have failed to adequately repair Plaintiff's vehicle within a reasonable amount of time or after a reasonable number of repair attempts.  Plaintiff's vehicle continues to suffer from the defective transmission described above.   At all times, Plaintiff, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

## **DEFENDANT**

183.    Defendant Ford Motor Company is a corporation organized under the laws of the State of Delaware and registered to conduct business in Georgia. Ford Motor Company's Corporate Headquarters is located at 1 American Road, Dearborn, Michigan 48126. Ford Motor Company designs and manufactures motor vehicles, parts, and other products for sale in the United States and throughout the world. At all relevant times, Defendant was and is engaged in the

business of designing, manufacturing, constructing, assembling, marketing, distributing, and/or selling automobiles and motor vehicle components in Georgia and throughout the United States.

## JURISDICTION AND VENUE

184.   The Court has diversity jurisdiction because Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds $75,000 for each Plaintiff.  Ford is a corporation organized, doing business, and existing under the laws of Delaware with its principal place of business in Michigan.

185.   This Court also has original jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a)(1), as modified by the Class Action Fairness Act of 2005, because Plaintiffs and Defendants are citizens of different states; there are more than 100 Plaintiffs; the aggregate amount in controversy exceeds $5 million, exclusive of attorneys' fees, interest, and costs; and Plaintiffs reside across the United States. The citizenship of each party is described further below in the "Parties" section.

186.   This Court has original jurisdiction to hear this case by virtue of 15 U.S.C. § 2310(d)(1)(A), the Magnuson-Moss Warranty Act, conferred under 28 U.S.C. § 1131. The Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

187.   Civil Rule of Procedure 20 provides "persons may join in one action as plaintiffs if…they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and [] any question of law or fact common to all plaintiffs will arise in the action."

188.   As set forth herein, Plaintiffs herein all have claims that all arise from the same acts and occurrences, therefore joinder is appropriate based on commonality pursuant to Rule 20.

189.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because Ford resides in the District Court of Delaware where it is incorporated.  Additionally, Ford is subject to personal jurisdiction in this District since (i) Ford conducts substantial business in this District and has intentionally availed itself of the laws and markets of the United States and this District; and/or (ii) many of the acts and transactions giving rise to this action occurred in this District.  Ford sells a substantial number of automobiles in this District, has dealerships located throughout this District, and the misconduct occurred in part in this District.

## PROCEDURAL HISTORY

190.    This case arises from a consolidated case filed in April 2017 in the Wayne Circuit Court in Michigan. The case was styled Cyr, et al. v. Ford Motor Company, Case No. 2017-006058-NZ.

191.    The *Cyr* Plaintiffs were comprised of over 12,000 named plaintiffs, including the Plaintiffs herein, who filed approximately 83 actions in the Wayne Circuit Court, and, as Plaintiffs in a pending individual lawsuit against Ford based on alleged problems with the PowerShift Transmission, were automatically excluded from the nationwide class action settlement against Ford, *Vargas v Ford Motor Company*, United States District Court, Central District of California, Case No. 2:12-cv-08388 ABC (FFMx).

192.    These cases advanced claims alleging the same Transmission Defects complained of herein.

193.    In February 2018, Ford filed a motion seeking summary judgment of, *inter alia,* the Michigan Consumer Protection Act claims and dismissal of the non-resident Plaintiffs' claims under the doctrine of *forum non conveniens*. Ford argued that the non-Michigan Plaintiffs' claims were not properly before the court, which was located in the same Circuit as Ford's world

headquarters, and should be filed in a forum other than Michigan State Court. The Wayne Circuit Court denied Ford's motion.

194.    In November 2018, the Michigan Court of Appeals granted Ford leave to appeal. *Cyr, et al. v. Ford Motor Company,* Case No. 345751.  On December 26, 2019, the Michigan Court of appeals reversed the lower court's holding and dismissed all of the non-Michigan Plaintiffs on the basis of forum non conveniens, acknowledging that a trial court may only exercise its discretion to apply forum non conveniens provided that some other appropriate forum exists. Specifically, the court stated that "Appropriate forums are the site of the incident, a corporation's state of incorporation or principal place of business and the state of plaintiff's domicile."

195.    In February 2020, Plaintiffs applied for leave to appeal the appellate decision with the Michigan Supreme Court, which was denied on November 4, 2020.

196.    On November 25, 2020, Plaintiffs moved the Michigan Supreme Court for reconsideration. On July 16, 2021, that request was denied.

197.    Plaintiffs now bring this case in accordance with the Order of the Michigan Court of Appeals.

198.    Concurrently, *Cyr* plaintiffs from all 50 states and Puerto Rico assert claims herein.

199.    Plaintiffs anticipate this case will be promptly transferred to the pending Multidistrict Litigation, *In re: Ford Motor Co. DPS6 Powershift Transmission Products Liability Litigation,* MDL No. 2814 pursuant to 28 U.S.C. § 1407, which was created by Ford for all DPS6 cases filed nationwide, will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. The JPML held:

> On the basis of the papers filed and the hearing session held, we find that these actions involve common questions of fact, and that centralization will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. The actions share complex factual questions

arising out of allegations that the DPS6 PowerShift Transmission installed in certain Ford Fiesta and Ford Focus vehicles is defective and negatively affects the drivability, safety, and useful life of the vehicles. The actions allege that plaintiffs' vehicles suffer from similar transmission-related problems, including slipping, bucking, jerking, sudden acceleration, delayed acceleration and downshifting, and premature wear that requires repair or replacement. Common factual questions include (1) whether the design or manufacturing of the PowerShift transmission is defective; (2) defendant's knowledge of, and conduct in response, to the alleged defect; and (3) whether vehicle owners and lessees have suffered a diminution in vehicle value or other economic damages. Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel, and the judiciary.

The actions in MDL No. 2814 involve common factual questions arising out of allegations that the DPS6 PowerShift Transmission installed in certain Ford Fiesta and Ford Focus vehicles is defective and negatively affects the drivability, safety, and useful life of the vehicles. *See In re Ford Motor Co. DPS6 PowerShift Transmission Prods. Liab. Litig.,* 289 F. Supp. 3d 1350, 1352-53 (J.P.M.L. 2018).

## FACTS COMMON TO ALL COUNTS

### OVERVIEW OF THE DESIGN AND OPERATION OF THE DPS6 TRANSMISSION

200.    Ford introduced the DPS6 Transmission (the "DPS6") in its Fiesta and Focus vehicles for the 2011 and 2012 model years, respectively.

201.    Plaintiffs' vehicles were manufactured by Ford and delivered to Plaintiffs equipped with the DPS6. Ford offered the PowerShift Transmission as the sole "automatic transmission" option in Plaintiff's vehicle.

202.    The DPS6 was designed, with input from Ford, by Getrag, a German transmission manufacturer. Getrag worked in concert with LuK, a German manufacturer of clutch components. The parts were supplied to Ford for incorporation as original equipment into Ford Focus and Fiesta vehicles. According to Ford, the DPS6 was supposed to provide uninterrupted torque from "twin

165

internal clutches to keep changes among its six forward gears smooth and seamless, automatically. One clutch supports the uneven gearset, one, three and five; while the other clutch controls the even gears, two, four and six. The powertrain control unit that electronically integrates and harmonizes engine and DPS6 PowerShift automatic transmission operation always keeps the engine in peak efficiency range. In conjunction with six optimally spaced gears, DPS6 increases smoothness between gears, without engine torque falling off."

203. The DPS6 is neither a traditional manual transmission, nor a typical automatic transmission, but rather is a computerized "automated manual" transmission.

204. Traditional manual transmissions use a driver-controlled clutch. By pressing and releasing a foot pedal, the driver causes the clutch to mechanically engage and disengage the engine from the transmission, allowing the vehicle to travel continuously while the driver manually changes gears. The clutch in a traditional manual transmission is a "dry clutch," incorporating at least one clutch disc, which is covered with a friction material (asbestos, carbon fibers). The clutch disc is fixed to the input shaft of the transmission's gearbox. When the friction material on the face of the clutch disc is pressed against the engine's rotating flywheel (which is done with a "pressure plate" utilizing strong springs), the clutch disc "locks onto" the flywheel with tremendous force, allowing the engine's flywheel to turn the transmission's input shaft with virtually no slippage or friction loss. Because a dry clutch allows for transfer of virtually all the engine's power to the transmission without friction losses, a properly designed and operating manual transmission is highly fuel-efficient. However, operation of a manual transmission can be difficult for less experienced drivers and can result in the vehicle jerking or shuddering during improper operation, manual transmissions are disfavored by some consumers. Moreover, the dry clutch will fail to

operate properly if the friction material is contaminated by oil from either the engine or the transmission's gearbox.

205.   Traditional manual transmissions are characterized by gear ratios that are selectable by locking selected gear pairs to the output shaft within the gearbox. All gears within the gearbox are and must remain lubricated by oil. The gears are arranged on parallel shafts: the input shaft, which is driven by the engine's rotation power transferred by the clutch as discussed above, must be sealed to prevent gearbox oil from contaminating the dry clutch. The output shaft transmits rotation power out to the vehicle's wheels. Sometimes a different shaft, known as a countershaft or layshaft, is arranged in parallel alongside the output shaft; in those applications, the layshaft is turned by the input shaft and from there, essentially serves as the input shaft for purposes of the gear arrangements and engagements with gears on the output shaft. The input shaft, or layshaft, and its gears generally rotate at the same speed as the engine when the clutch disc is pressed to the flywheel. Each input shaft gear is enmeshed with companion gears on the output shaft; the gears slide along the shafts, when selected by the driver using the shift lever, to achieve different overall gear ratios for launching from a standstill, lower speeds, higher speeds, and so on. However, because the various pairs of gear sets are not always engaged with each other, shifting requires the gear speeds to be precisely synchronized and can result in difficult gear engagements, particularly for inexperienced drivers or with worn gear sets or worn synchronizers.

206.   In contrast, typical automatic transmissions free the driver from operating the dry clutch using a fluid-filled device called a torque converter. The torque converter is a fluid coupling, in which two turbines oppose each other within a sealed fluid-filled container. The engine is connected to one turbine and the transmission's input shaft is connected to the other. When the engine rotates its turbine, the moving and pressurized fluid rotates the opposite turbine causing

power to be transferred to the transmission's input shaft. Thus, the torque converter substitutes for a dry clutch, transmitting power from the engine to the transmission's input shaft through a fluid medium rather than direct mechanical engagement to the flywheel.

207.   Conventional automatic transmissions are characterized by more complicated "planetary gear sets," rather than the parallel gears on shafts as in a typical manual. The conventional automatic transmission's gearbox contains an input shaft with gears (known as "sun gears") that are surrounded by three or four smaller gears (known as "planetary gears"). The planetary gears are held in position relative to each other by a brace (known as a "carrier"). The planetary gears surround and are enmeshed with the sun gear. Meanwhile, the set of planetary gears is itself surrounded by (and each planetary gear is enmeshed with) an outer ring gear. If the sun gear is rotated and the ring gear held stationary, the planetary gears rotate in an orbit around the sun gear, thereby turning the carrier (and anything connected to the carrier). If the sun gear is rotated and the planetary carrier held stationary, the ring gear (and anything connected to that) will rotate around the entire assembly. The arrangements of sun, ring, and planetary gears are moved hydraulically forward and backward along the input shaft, and the different components variously allowed to spin or held stationary, to result in various overall gear ratios. As a result of this arrangement, the gear shifts are typically smoother (because the sun, planetary, and ring gears are constantly engaged with each other).

208.   Automatic transmissions offer increased comfort and convenience to drivers because the torque converter's fluid coupling transmits power from the engine to the transmission smoothly and predictably, and because the planetary gear arrangement is more stable and smoother in its operation. Also, there is no need to keep any friction surfaces "dry" or separate from the lubricating transmission fluid. However, conventional automatics are generally less fuel efficient

than manual transmissions because the torque converter transfers power through fluid less efficiently than a mechanical dry clutch, and a conventional automatic's hydraulic shifts are not as "positive" as a manual transmission's shifts.

209. Plaintiffs are informed and believe, and therefore allege, that Ford utilizes and has always utilized manual transmissions featuring a dry clutch as described above and featuring a gearbox housing input and output gears on parallel input and output shafts. Plaintiffs are informed and believe, and thereby allege, that Ford has never, in any instance, equipped any Ford vehicle for sale to the public with a manual transmission that used any different general type of clutch, nor any different general type of gearbox.

210. Plaintiffs are informed and believe, and therefore allege, that Ford utilizes, and at all times prior to 2010 had always utilized, automatic transmissions featuring a torque converter to provide a fluid coupling as described above, and featuring a gearbox housing planetary gear sets as described above, with a few notable exceptions: the continuously variable transmission (CVT) recently developed and used in some Ford vehicles; the dual-dry-clutch transmission used in the $200,000+ Ford GT; the dual-wet-clutch transmission used in some models in the European market; and the DPS6 "automatic" transmission used in Plaintiffs' vehicles.

211. Plaintiffs are informed and believe, and therefore allege, that Ford has never, in any other instance, equipped any Ford vehicle for sale to the public with an "automatic" transmission that used any different general type of power coupling, nor any different general type of gearbox.

212. Ford marketed and sold its DPS6 PowerShift Transmission as an automatic transmission that offered the "best of both worlds" combining a manual transmission's fuel economy with an automatic transmission's ease of operation and shift quality.

213.    Ford's DPS6, while sometimes referred to as an automatic, is a set of computerized manual transmissions. It lacks a torque converter, instead using two clutches to mechanically engage and disengage the engine and transmission. Whereas similar "automated manual" transmissions on the market use "wet" clutches bathed in oil, Ford's DPS6 clutches lack the oil pumps and other components of a wet clutch system, and instead operate "dry."

214.    Ford incorporated the DPS6 into Fiesta and Focus vehicles to meet heightened governmental and consumer expectations for fuel economy, performance, convenience, and efficiency. Ford designed and marketed its DPS6 PowerShift Transmission as a more advanced and fuel-efficient automatic transmission. According to Ford's press release dated March 10, 2010, "PowerShift with dry-clutch facings and new energy-saving electromechanical actuation for clutches and gear shifts saves weight, improves efficiency, increases smoothness, adds durability and is sealed with low-friction gear lubricant for the life of the vehicle. The transmission requires no regular maintenance."

215.    In theory, a computer-controlled, automated manual transmission may provide the convenience of an automatic transmission without sacrificing the fuel efficiency and shift speed of a manual transmission. In practice, however, Ford's PowerShift Transmission is plagued by numerous problems and safety concerns.

## THE DPS6 DEFECTS

216.    The DPS6 is defective because it suffers from the following safety-related mechanical and electronic failures, which arose following the initial launch of the transmission in late 2010 (for the 2011 MY Fiesta) and continued throughout the next six-years: Wet Clutch" Shudder Attributed to Leaking Input Shaft Seals, Mechatronic Actuation Module (MAM) Failures, "Dry" Clutch Shudder, Software Calibration Issues (collectively the "Transmission Defects").

170

217.    These Transmission Defects, individually or collectively, caused the following "symptoms" in the DPS6's performance: constant gear slipping, bucking, kicking, jerking, harsh engagement, premature internal wear, sudden acceleration, delayed downshifts, delayed acceleration, difficulty stopping the vehicle, and, eventually, premature transmission failures.

218.    Such Transmission Defects that cause passenger vehicles to jerk, buck, suddenly lurch forward, delay acceleration, delay deceleration, and/or suddenly lose forward propulsion present a safety hazard – particularly when they occur without warning – because they severely compromise the driver's ability to control the car's speed, position, acceleration (including from a stop), and deceleration.

219.    For example, these conditions make it difficult to safely merge into traffic. Even more troubling, the Transmission Defects can cause the vehicle to fail to downshift and decelerate, but instead continue to transfer power to the transmission and even surge the engine's RPMs, even when the brakes are depressed. As a result, drivers of vehicles equipped with the DPS6 have reported their vehicles lurching forward into intersections and at red lights, despite applying their brakes to stop the car.

220.    The Transmission Defects also causes premature wear to the DPS6's clutch plates and other internal components, which results in premature transmission failure and requires expensive repairs, including premature transmission replacement.

221.    Almost immediately after it began selling DPS6-equipped vehicles, Ford began receiving complaints and other information that the DPS6 PowerShift Transmission was not working properly or "as advertised." For example, in a 2011 New York Times review of the Ford Focus, the reviewer stated that "Ford programmed the PowerShift Dual-clutch transmission to

change gears in odd and infuriating ways" and that "[t]he transmission is often in the wrong gear at the wrong time, resulting in jerks, pauses and lethargic acceleration."

222.    In response to these criticisms, Greg Burgess, an engineer at Ford, conceded in the same New York Times article that "[i]t is quite a challenge to deliver something that is very, very fuel efficient and yet feels like a conventional automatic, and there are some balances and some trade-offs that we make."

223.    In response to complaints about the Transmission Defects, in 2010 and 2011, Ford issued multiple Technical Service Bulletins ("TSBs") to its dealers and authorized repair facilities acknowledging defects in the DPS6. Ford's TSB from September 2010, covering the 2011 Ford Fiesta, informed dealers and service personnel of "concerns such as no engagement or intermittent no engagement in Drive or Reverse when shifting from Park to Drive or Reverse, grinding noise during engagement, and/or check engine light with transmission control module (CM) diagnostic trouble code…"

224.    Similarly, Ford's TSB released on January 1, 2011, covering the 2011 Ford Fiesta with the PowerShift Transmission, informs dealers and service personnel of problems with the PowerShift Transmission causing "a loss of power, hesitation, surge, or lack of throttle response while driving."

225.    Ford's TSB from March 31, 2011, also covering the 2011 Ford Fiesta, informs dealers of problems where the PowerShift Transmission "exhibit[s] a rattle/grind noise in reverse only."

226.    Ford issued two separate TSBs in May 2011, both covering the Ford Fiesta. These TSBs addressed problems with the DPS6 including "concerns in Drive or Reverse when shifting

172

from Park to Drive or reverse, no engagement, delayed engagement, intermittent engagement, noise during engagement…"

227.    Another Ford TSB released in September 2011 advised dealers to reprogram the transmission computer if 2011 Ford Fiesta owners complained about "hesitation when accelerating from a low speed after coast down, harsh or late 1-2 upshift, harsh shifting during low-speed tip-in or tip-out maneuvers and/or engine r.p.m. flare when coasting to a stop."

228.    The 2012 Ford Focus was the subject of a September 2011 Ford TSB, which informed dealers and service personnel of transmission problems including: "RPM flare on deceleration coming to a stop, rough idle on deceleration coming to a stop, intermittent engine idle fluctuations at a stop, intermittent vehicle speed control inoperative, intermittent harsh engagement/shift…"

229.    In May of 2012, Ford issued a "Customer Satisfaction Program: Program Number 12B37." In a letter sent to 2012 Ford Focus drivers, Ford indicated that drivers "may experience rough or jerky automatic transmission shifts. In addition, the vehicle may experience roll back when the driver is transitioning from the brake pedal to the accelerator pedal while on a slight incline." Ford, however, did not issue a recall and did not warn drivers of the safety risks associated with these known problems – even though, as alleged below, Ford was obligated to so do.

**FORD KNEW ITS DPS6 POWERSHIFT TRANSMISSION WAS DEFECTIVE AND UNSAFE EVEN BEFORE IT BEGAN SELLING DPS6-EQUIPPED VEHICLES**

230.    Prior to the DPS6's introduction into the marketplace, Ford determined that a component failure that led to an "unintended neutral" – *i.e.,* a loss of motive power – was assessed as the highest severity risk factor on its Failure Mode and Effects Analysis (FMEA).

173

231.     Ford made this FMEA determination by employing a standard risk-assessment technique to determine the myriad ways this dual dry-clutch transmission might fail, the likelihood of such failures, and the severity of the consequences.

232.     The FMEA process, which Ford itself helped pioneer, ranks the severity of component failures on a ten-point scale, with the high end of the scale denoting the most severe failures.[1]

233.     Specifically, a rank of "10" means a failure mode that is "hazardous without warning," described as "very high severity ranking when a potential Failure Mode affects safe vehicle operation and/or involves noncompliance with government regulation without warning."[2]

234.     A rank of "9" means a mode that is "hazardous with warning," also described as "very high severity ranking when a potential high failure mode affects safe vehicle operation and/or or involves noncompliance with government regulation with warning."[3]

235.     Failure modes with high severity ranks must be designed out of the product, or have robust countermeasures designed into the product, or (if, despite the former two, they occur in the field) lead to a recall.

236.     Ford and Getrag engineers identified a number of failure modes in the DPS6 that could result in "Unintended Neutral Events" – meaning the transmission would disengage the gears and slip into the neutral position, even though the driver had selected a drive gear and the gear shift lever remained in the driver selected position, and regardless of the vehicle's speed. Such Unintended Neutral Events resulted in the vehicle losing drive/motive power from the engine, which poses a safety hazard for a number of reasons, including, *inter alia,* the risk of collision; the

---

[1] Failure Modes and Effects Analysis, Ford FMEA Handbook, version 4.2; pg. 1-4, 3-33; December 2011
[2] VGS 20346048, Severity 10 TCU Connector Not Error Proofed; Greg Goodall; October 3, 2008.
[3] VGS 20346048, Severity 10 TCU Connector Not Error Proofed; Greg Goodall; October 3, 2008.

driver's inability to drive the vehicle out of dangerous traffic; and the risk to occupants when stranded in high-speed road conditions. Moreover, government regulations require transmissions to provide engine braking during deceleration, which is nonexistent during an Unintended Neutral Event.

237.    During 2007 and 2008, Ford and Getrag argued as to how such an unintended neutral event should be rated/classified as a safety issue. In these arguments, Ford corporate officials, including Ford's Office of the General Counsel (OGC), argued that a failure mode that led to an unintended neutral event should be ranked as the highest or most severe safety type of safety problem, referred to as a Severity Level 10 ("SEV 10").

238.    On February 20, 2008, Mr. Kirchhoffer and Joe Wickenheiser (a Ford "Small Car External Investigations and TREAD Reporting Manager") shared an Audi recall involving a "competitive Electro-hydraulic clutch actuator" in which a small number of 2004 Audi TT models had a safety defect that could lead to degraded clutch performance: "The clutch could lose its ability to provide torque to the transmission without a prior warning, which could allow the vehicle to roll, increasing the risk of a crash."[4] Mr. Kirchhoffer noted in response: "This info is very helpful with respect to 'Unintended Neutral.' This is exactly the same event we are trying to avoid occurring to the customer. As a benchmark to be cascaded to the team – very helpful. It reinforced the effort to keep SEV=10 and drive the detection on manufacturing to level =1 to avoid this happening – much appreciated."[5]

---

[4] VGS20386981; RE: Audi VOQ.xls; Johann Kirchoffer; Ford Motor Company; February 20, 2008.
[5] VGS20386981; RE: Audi VOQ.xls; Johann Kirchoffer; Ford Motor Company; February 20, 2008.

239.     Further, Dave Garrett, a Ford Campaign Prevention Specialist, opined to the Ford/Getrag team that "[i]n practice, I urge engineers to increase the FMEA severity to 10, for any failure mode that has caused a previous Safety or Emission related recall."[6]

240.     As detailed, *infra*, Ford has issued safety recalls on other vehicle models for failure modes that caused a stall or loss of motive power event, including in circumstances when the driver was forewarned.

241.     Despite the stated concerns of its Office of General Counsel, Vehicle Safety Office, and Quality Technical Specialists, Ford's "senior management team" chose to adopt Getrag's position and ultimately rated the Unintended Neutral failure mode as merely a SEV "8."

242.     For example, on September 25, 2008, Mr. Kirchhoffer wrote an internal email to Ford's DPS6 team entitled, "Unintended Neutral Severity Rating: Clear Direction," in which he explained that "[p]er direction from our senior management team please be advised that: 1) The Unintended Neutral Event shall be renamed to 'Loss of Drive'; 2) The SEV Classification is confirmed to SEV = 8…."

**AFTER BEGINNING TO SELL DPS6-EQUIPPED VEHICLES, FORD RECEIVED ADDITIONAL INFORMATION THAT THE TRANSMISSION DEFECTS WERE DANGEROUS, REPORTEDLY CAUSING ACCIDENTS, INJURIES**

243.     The unintended neutral failure events plagued both Fiesta and Focus vehicles equipped with the DPS6, and these safety defects continue to this day. For example, on February 22, 2011 (after the launch of the Fiesta and in preparation for the launch of the Focus), DPS6 Transmission Systems Engineer, Tom Hamm, wrote an email to Ford engineers David Lempke and Piero Aversa regarding the upcoming 2012 Focus vehicle. Mr. Hamm stated, "Please tell me we are not going to launch this vehicle with the same issue we have on the Feista [sic]?"

---

[6] VGS7-0058850; Ford Severity Classification; David Garrett; Ford Motor Company; June 15, 2007.

176

244.   Customers consistently reported that the transmission lost power at inopportune times, leaving drivers unable to maneuver in traffic or startling other drivers, leading to crashes, and near crashes.

245.   On September 20, 2011, Charles Baldree (a Ford sales manager for 30 years) contacted Mr. Lempke to share his own experiences in which a DPS6 transmission simply stopped working in third gear – a dangerous condition in certain driving scenarios:

> Just thought I would provide some feedback, and find out when the new TSB will be out. I am still having problems with my transmission (shuttering, hesitating, whining noise, etc.) but this week a couple of new ones surfaced. I experienced it twice. Both time I think the car was probably in about third gear when the transmission seemed to go in "free fall.[sic] It simply stopped working. After a few seconds, the transmission kicked back in with a loud thump and shutter. The loss of power could have been serious in on-coming traffic. The original TSB helped with the shift points, but I am really hoping the second TSB will fix the remaining problems. I was looking at all the posts on Focus Fanatics and believe me there are many, many 2012 Focus owners who are up in arms over the Getrag transmission. I think if Ford doesn't do something quick there will be a revolt. Owners are so mad they are bad mouthing the product something furious. Also, some of them think there is a serious safety issue with the transmission and plan to contact the appropriate government authority to demand a recall. Other owners are asking for the Company to provide an extended warranty on the transmission.[7]

246.   Ford was well aware that it was likely that failures, complaints, crashes causing property damage and injuries were likely to continue.

247.   The DPS6 transmission suffers from multiple safety-related mechanical and electronic failures that emerged from the initial launch of the transmission in late 2010 (for the 2011 MY Fiesta) and continuing over a six-year period due to the Transmission Defects referenced *supra*. According to Ford's internal documentation, these Transmission Defects include:

> Because of a mismatched coefficient thermal expansion between the printed circuit board and the ATIC chips, over time, thermal cycling and mechanical strain will produce solder cracks on multiple ATIC91 ATC106 pins.[8] This leads to a loss of

---

[7] VGS20044739; Subject: 2012 Focus Transmission Issues; Charles Baldree; 2011.

[8] VGS5-00365439; Re: Request for Confidential Treatment of Information Pertaining to a Recent WebEx Presentation, November 19, 2017.

communication and an unintended neutral. Ford first learned of this issue in January 2010, when vibration and rapid change of temperature testing found pin failures and suspected solder failures: "Parts are being prepared for in depth solder joint investigation."[9]

Software Calibration Issues. "Another issue that surfaced in 2016 was Ford's decision to release a software calibration that allowed power loads to the clutch that could result over time in the failure of either the friction plate or the pressure plates. Notably, software calibration issues have plagued the DPS6 Transmission since before its launch.

Delayed Crank Failure. In 2016, Ford identified a delayed crank failure defect with the DPS6 that was due to the "clutch actuator lever component inside the transmission."[10]

248.   As a result of one or more of these defects, acting either individually or in combination, the PowerShift Transmissions in Ford Focus and Fiesta vehicles consistently slip, buck, kick, jerk, harshly engage; and have premature internal wear, sudden acceleration, delay in downshifts, delayed acceleration, create difficulties in stopping the vehicle, and, eventually, premature transmission failure.

249.   The Transmission Defects cause unsafe conditions in vehicles equipped with the PowerShift Transmission, including, but not limited to suddenly lurching forward, delayed acceleration, and sudden loss of forward propulsion (*i.e.*, the "unintended neutral events" referenced above). These conditions present a safety hazard because they severely affect the driver's ability to control the vehicle's speed, acceleration, and deceleration. For example, these conditions make it difficult to safely merge into traffic. Even more troubling, the Transmission Defects can cause the vehicle to fail to downshift and decelerate, but instead continue to transfer power to the transmission and even surge the engine's RPMs, when the brakes are depressed. As

---

[9] VGS7-0076353; GETRAG Summary for January 29,2010 Conti meeting: handout for today's 6DCT250 meeting; Ibrahim Kaddouh; Ford Motor Company; January 29, 2010.

[10] Ford DPS6-SAC 00045387; RE: QSF do Fiesta – info; Colin Menapace; Ford Motor Company; November 29, 2016.

a result, drivers of vehicles equipped with the PowerShift Transmission have reported their vehicles lurching forward into intersections at red lights due to the failure of their braking efforts to stop the vehicle.

250. Plaintiffs are informed and believe, and on that basis allege, the Transmission Defects also cause premature wear to the PowerShift Transmission's clutch plates and other components, which results in premature transmission failure and requires expensive repairs, including premature transmission replacement.

251. As early as 2010, Ford knew or should have known that the PowerShift Transmission was defective.

**DESPITE KNOWING THAT THE DPS6 POWERSHIFT TRANSMISSION HAD SAFETY DEFECTS, FORD FALSELY AND PUBLICLY REPRESENTED – TO PLAINTIFFS, CONSUMERS, AND GOVERNMENT REGULATORS – THAT THE PROBLEMS WITH THE DPS6 TRANSMISSION WERE NOT SAFETY-RELATED**

252. In its official communications with national agencies charged with consumer protection or safety, Ford characterized the DPS6's myriad defects as customer satisfaction or transmission quality issues and denied that they had caused any (or only a few) crashes.

253. In a November 2014 presentation to the NHTSA, Ford purported to address the solder cracks on the ATIC chips in the MAM, transmission shift quality, rollback, the shudder problem and the leaking input shaft seals problems detailed above. But in this presentation, Ford did not mention any threats to safety, nor did Ford include information about crashes and injuries that were alleged to have been caused by the loss of motive power and other transmission defects.[11]

254. Ford acknowledged internally that as of May 31, 2015, it had received 33,408 warranty reports alleging "loss of motive power" & "no starts" on vehicles with DPS6

---

[11] VGS5-00365439; Re: Request for Confidential Treatment of Information Pertaining to a Recent WebEx Presentation, November 19, 2017.

transmissions identified in warranty analysis in all regions based on the MAM communications concerns detailed above."[12]

255.   In March 2016, Ford (via its wholly owned subsidiary Ford of Australia) made a similar presentation to the Australian Competition and Consumer Commission (ACCC) about the complaints regarding the DPS6 by enumerating its actions to repair vehicles via a Technical Service Bulletin. A month earlier, the Australian Department of Infrastructure and Regional Development, which assists the ACCC on matters of vehicle safety, initiated an investigation based on "several complaints over the past four years relating to 2010- 2014 Ford Focus and Ford Fiesta transmissions. "The Department considers reports of safety issues of non-compliant standards, and where a potentially systemic issue is identified, the Department may investigate further." The DIRD sent seven complaints and asked Ford if it had received similar complaints and asked, "Is Ford aware of any reported safety incidents attributed to the dual clutch transmissions in Focus or Fiestas?"[13]

256.   In January 2017, Ford made yet another similar presentation to the Thailand Office of the Consumer Protection Board, detailing the wet and dry shudder issues. It did not mention the solder cracks in the MAM. Again, Ford asserted:

> The quality issues do not pose safety concerns • Wet and dry clutch shudder affects drive quality only. Ford's Automotive Safety Office (ASO) met with the US National Highway Traffic Safety Administration (NHTSA) to review the PowerShift quality issues and share field data. NHTSA reviewed the data, asked for additional data, and has not identified a safety defect. Ford Thailand has not received any reports of injuries relating to the PowerShift transmission quality concerns. Ford ASO has continued to monitor field data and has not identified a safety issue.[14]

---

[12]VGS7-0179114; Field Review Committee Fact Sheet Draft; undated.
[13] Ford-DPS6-SAC- 00021948; Ford Focus and Fiesta Transmission Complaints [SEC=UNCLASSIFIED]; Caitlin Arnold; Department of Infrastructure and Regional Development.
[14] Ford-DPS6-SAC 0012328; Meeting with OPCB; Ford Motor Company; January 20, 2017.

257.    In press statements, Ford continued to assert that the DPS6's multiple defects did not threaten safety, nor did they cause crashes.

258.    For example, in a statement intended for the European press about the leaking input shaft seals, Ford stated: "Is this a safety issue for customers? No. Our team has investigated every report. After an exhaustive engineering evaluation, we have identified the concern as a shift-quality issue, and not safety related."[15]

259.    In a statement intended for the Chinese press Ford similarly stated: "Is his a safety issue? Have you received any reports of injuries or accidents related to this issue? [PD] No."[16]

260.    Contrary to these definitive public statements, in private/internal corporate communications Ford officials described the MAM failures as longstanding safety hazards and acknowledged that the cracks in the solder joints, along with the dry shudder and leaking input shaft seals defects were linked to crashes, injuries and one death.

261.    In May 2011, a 2011 Fiesta was brought into service for a condition in which the vehicle went forward while in reverse gear. An email exchange between Ford engineers David Lemke and Tom Hamm noted: "Tom…make the call down there ASAP.. find out more details.. Ford Safety Office wants to get involved."[17] And in another email related to this vehicle Hamm asks a colleague to prevent the dealer from swapping out the vehicle's transmission before they can take a closer look: "I wouldn't be asking if it wasn't a safety issue."[18]

262.    In August 2012, Ford officials prepared a "white paper" to outline the problem: "Ford vehicles equipped with DPS6 transmission may experience a loss of motive power due to an issue with the DPS6 MAM. Approximately 2.1M global vehicles have been produced with

---

[15] VGS5-00324037; DPS6 Quality Issue - European Perspective; Ford Motor Company.
[16] VGS7-0130891; Questions to be answered; Ford Motor Company.
[17] VGS20039682; FW: Report Summary for the CQIS Report#BEFAK003; David Lempke; May 9, 2011.
[18] VGS20039744; RE: Vehicle located at Hampstead, N.Y. Tom Hamm; May 10, 2011.

potential for this concern. A Permanent Corrective Action (PCA) has been identified and will be in production by March 2015. Purchasing is working with the MAM supplier to increase production capacity for additional service parts supply."[19]

263.    In an August 13, 2012, internal email exchange regarding the DPS6 MAM among Ford transmission engineers, Jay Richardson of Ford's "6F15/DPS6/MPS6/FN Transmission Planning Powertrain Strategy & Business Office" noted: "This being said, Roger has passed on that this is a Safety issue. If that is true, then this is a must do regardless of business case. The paper needs to clearly point out this issue."[20]

264.    In 2013 (contrary to Mr. Kwasniewicz's later assertion), Ford and Getrag engineers were able to witness first-hand DPS6 safety concerns, such as the "slingshot" behavior:

> John and I were at a dealer last week and invited the Getrag team to come along- to get some real world feel of tech issues - unfortunately the guy didn't have bring equipment with him - we drove a vehicle that had a sling shot affect during slight power on down shifts what do you do for that one??? tell customer its normal and they wasted their time bringing it in, perform the IDS routines and adaptive drive and see if that helps or slap a TCM or a clutch into it - or both. These are the situations we need deeper diagnostics.[21]

265.    In January 2014, Ford issued a "White Alert," defined as a "report of possible safety or regulatory concern," for a customer concern described as "an engine stall while driving, hard to start."[22]

266.    In a March 26, 2014, internal email exchange that included Gunnar Hermann, Ford of Europe's vice president for quality and Mr. Kwasniewicz, Ford employees admitted that the stalling reports were safety concerns: "Ted, Scott during my visit here in Israel, I was confronted

---

[19] VGS7-0059304 Overt Detection and Early Warning of DPS6 Mechatronic Actuation Module (MAM) Issue. Ford Motor Company; 2014.

[20] VGS20149430; DPS6 NG MAM Paper; Jay Richardson; Ford Motor Company; August 13, 2012.

[21] RE: AVL Data from Ford Fiesta/Focus; Jeremiah Cannon; Ford Motor Company; April 4, 2013.

[22] VGS20207472; RE: Israel White Alert for Stall; Mark Thompson; Ford Motor Company; January 22, 2014.

with 4 cases, where stall conditions occurred while driving. This is clearly a safety related issue. Can you share your workplans please, need to understand how far we are away from a solution. I would appreciate your feedback."[23]

267.   In January 2015, an engineer discussing a Field Service Action related to the MAM defect noted that solder cracks on ACT 91 were a safety hazard: "Not sure 106 DTC's should be included as they don't have the safety issue the 91 does ... as they maintain ASM 3 speed.[24]

268.   Over a two-year period from September 2014 to August 2016, Ford engineers opened three 14D investigations – one into the MAM/ATIC chip failures, one into the leaking input shaft seal problem and one into the dry shudder problem. A 14D is often a precursor to a recall. According to Ford's FMEA Handbook:

> Before an automotive manufacturer engages in a campaign, there has been thorough investigation and analysis of the issue. Often this analysis begins with a Global 8D where the root cause which generated the in field defect to occur is determined. Additionally, the "escape" root cause is determined. In other words, how did the product testing miss this defect? Corrective actions are targeted at both items and implemented as part of the correction to the vehicles in question. When an issue is raised to a recall, the Global 8D will have additional information added, and it will become a 14D. Both of these investigations characterized the problems as design defects and noted crashes and injuries associated with these defects.[25]

269.   On or about September 2014, Ford engineers initiated a 14D to analyze the leaking input shaft seal problem and noted: "Ford Transmission Driveline Engineering (TDE) has sealing system design rules that apply to internal designs.

270.   As noted, *supra*, Ford did not share with various governmental agencies the extent of its knowledge of the various defects, nor of the crashes and injuries associated with them.

---

[23] Subject: AW: Israel White Alert for Stall; Gunnar Hermann; Ford Motor Company; March 26, 2014.
[24] VSG7-0163883 RE FSA; Jerimiah Cannon; Ford Motor Company; January 14, 2015.
[25] FMEA Handbook; Version 4.2; Pg Glossary-2; Ford Motor Company 2011.

Indeed, the NHTSA review into the DPS6 transmission defects never led to an actual defect investigation because Ford never disclosed the full details about the safety issues.

271.    As a result, Ford was successful in avoiding both a rapid decline in sales and safety recalls by hiding the DPS6 safety defects from consumers and regulators.

272.    Rather than issue safety recalls for a problem Ford could not "fix," Ford instead launched four different "Special Customer Service Campaigns" from 2011 to 2016, which merely extended the warranty duration for Focus and Fiesta vehicles plagued by leaking input shaft seals and the MAM solder cracks.[26] In addition, Ford issued no fewer than 17 Technical Service Bulletins (TSBs) from 2010 to 2016 outlining Ford-recommended repair procedures for a litany of DPS6 Transmission problems.

273.    In July 2017, the Australian Competition and Consumer Commission initiated proceedings against Ford, "alleging that it engaged in unconscionable and misleading or deceptive conduct and made false or misleading representations in its response to customer complaints." Specifically, the ACCC alleged that Ford consistently "lied to its customers about the nature of the defect – blaming it on their driving styles, rather than the transmission. About 35,000 vehicles sold in Australia had at least one repair relating to the DPS6 transmission, yet Ford refused to provide a refund or replacement vehicle to consumers, even after multiple repairs did not fix the issues. In most cases, Ford only provided replacement vehicles in accordance with its "PowerShift Ownership Loyalty Program," which required consumers to make a significant payment [$7,000] towards a replacement vehicle."[27]

---

[26] Customer Satisfaction Program 11B31, Ford Motor Company, January 13, 2012; Customer Satisfaction Program 14M01; Ford Motor Company; July 21, 2014; Customer Satisfaction Program 14M02; Ford Motor Company; February 20, 2015; Customer Satisfaction Program 15B22; Ford Motor Company; August 4, 2015.
[27] ACCC takes action against Ford; press release; Australian Competition & Consumer Commission; July 27, 2017.

274.    In April 2018, Australia's Federal Court ordered Ford to pay a (AUS)$10 million fine for "unconscionable conduct." In addition, Ford had to establish a program to review customer requests for refunds or replacement vehicles made between May 1, 2015, and November 1, 2016, and to provide customers with access to more information about their cars, including the history of manufacturing defect repairs performed on their vehicles.[28]

275.    In 2018, Ford was forced in a civil trial in Thailand to compensate 291 Focus and Fiesta owners for selling substandard vehicles. In the country's first verdict in a class-action ruling, the South Bangkok Civil Court ordered Ford Sales & Service to pay between 20,000 and 200,000 baht each, plus a 7.5% interest rate a year, for repair costs and lost time. "The award was for the production of unsafe, substandard and defective vehicles which put drivers at risk."[29]

## FORD FAILED TO COMPLY WITH ITS REGULATORY OBLIGATIONS AND REPORTING RESPONSIBILITIES

276.    As a global automaker, Ford is aware of its safety recall obligations under controlling U.S. law; and has issued safety recalls for vehicles with defects that cause unintended stalls.

277.    This controlling U.S. law includes, but is not limited to, Title 49, section 573 of the Code of Federal Regulations, entitled, "Defect and Noncompliance Responsibility and Reports," sets forth the obligations and responsibilities of motor vehicle manufacturers such as Ford under 49 U.S.C. §§ 30116-30121 (a portion of the National Traffic and Motor Vehicle Safety Act) regarding safety-related defects and noncompliance with Federal Motor Vehicle Safety Standards (FMVSS).[30] Among those obligations are reporting requirements to the National Highway Traffic

---

[28] Court orders Ford to pay $10 million penalty for unconscionable conduct; press release; Australian Competition & Consumer Commission; April 26, 2018.

[29] Ford Thailand Ordered to Compensate Focus and Fiesta Owners for Selling Substandard Vehicles; Chiang Raj Times; September 22, 2018.

[30] 49 CFR § 573.

185

Safety Administration ("NHTSA") to inform the agency of defective and noncomplying vehicles and equipment, and to allow NHTSA to assess the adequacy of manufacturers' defect and noncompliance notification campaigns, of the corrective action, the owner response, and to compare the defect incidence rate among different groups of vehicles.[31] Manufacturers are required to furnish a report to NHTSA "for each defect in his vehicles or items of original or replacement equipment that be or the Administrator determines to be related to motor vehicle safety, and for each noncompliance with a motor vehicle safety standard in such vehicles or items of equipment which either be or the Administrator determines to exist."[32]

278.   Further, under the Motor Vehicle Safety Act, 49 U.S.C. 30101, "motor vehicle safety" is defined in relation to NHTSA's enforcement and regulatory authority as the "the performance of a motor vehicle or motor vehicle equipment in a way that protects the public against unreasonable risk of accidents occurring because of the design, construction, or performance of a motor vehicle, and against unreasonable risk of death or injury in an accident, and includes nonoperational safety of a motor vehicle."[33] This regulation sets a "5 working day" deadline for a manufacturer to make such notification:

> Each report shall be submitted not more than 5 working days after a defect in a vehicle or item of equipment has been determined to be safety related, or a noncompliance with a motor vehicle safety standard has been determined to exist.[34]

279.   Plaintiffs are informed and believe, and on that basis allege, that Ford violated this reporting requirement by failing to report the safety-related defects, accidents, incidents and other matters alleged above to NHTSA within the mandatory five working day period.

---

[31] 49 CFR § 573.2.
[32] 49 CFR § 573.6.
[33] 49 USC § 30102(a)(9).
[34] 49 CFR § 573.6.

280.   Moreover, Ford consciously avoided a recall of the DPS6 transmission by claiming to several governmental authorities around the globe, including NHTSA, that the DPS6 transmission's multiple malfunctions only amounted to "customer satisfaction issues" and had not been linked to crashes, injuries and fatalities.

281.   Ford understood its obligations under federal regulations to report these safety defects to the NHTSA, but rather than comply with federal law, Ford instead created a false narrative to NHTSA to forego a safety recall by focusing on improving the warning to customers before an impending transmission failure.

282.   Ford has two divisions devoted to ensuring that its products meet all Federal Motor Vehicle Safety Standards and regulatory responsibilities – the Automotive Safety Office (ASO) and the Office of the General Counsel (OGC). According to Ford: "The Automotive Safety Office Serves as primary interface with organizations that deal with vehicle safety and defect/compliance matters and contributes technical advice to government agencies regarding safety rulemaking. We also provide technical analysis related to field performance of Ford vehicles."[35] In addition, Ford's Office of General Counsel "interfaces with regulatory agencies, including EPA, NHTSA, EEOC and state attorneys general."[36] Further, in Ford's 2014 Corporate Sustainability Report, Ford demonstrates its knowledge of its obligations under the Safety Act:

> In the U.S., the National Traffic and Motor Vehicle Safety Act of 1966 (the "Safety Act") regulates vehicles and vehicle equipment in two primary ways. First, the Safety Act prohibits the sale in the United States of any new vehicle or equipment that does not conform to applicable vehicle safety standards established by the National Highway Traffic Safety Administration (NHTSA). Second, the Safety Act requires that defects related to motor vehicle safety be remedied through safety recall campaigns.

---

[35] Ford Automotive Safety Office;
https://corporate.ford.com/careers/departments/sustainability-environment-and- safety-engineering.html.
[36] Ford Office of the General Counsel;
https://corporate.ford.com/careers/departments/office-of-the-general- counsel.html.

Manufacturers are obligated to recall vehicles if they determine the vehicles do not comply with a safety standard or contain a defect affecting safety.[37]

283.    Further, Ford's internal process documents remind employees of these obligations. For example, in July 2013, Ford employees Joseph Borneo and Robin Buseck requested that Ford's 6-Sigma Center initiate a "Things Gone Wrong" ("TGW") Task Force to conduct a consumer survey on the problems with the Focus and Fiesta DPS6 to determine how drivers experienced the transmission defect.[38] As part of this process, the form used to make the request emphasized that the Ford Automotive Safety Office or the Office of General Counsel may ask for the results to satisfy a NHTSA inquiry. It also noted that any Transportation Recall Enhancement, Accountability and Documentation (TREAD) Act-reportable information obtained by the survey must be included in Ford's quarterly TREAD submission.

284.    This knowledge is evident in Ford's internal communications regarding the defects in the DPS6 transmission, in which Ford employees discuss scenarios that could prompt a recall, and ways to avoid triggering a TREAD reportable incident or the attention of the regulators.

285.    For example, in January 2009, Ford engineers exchanged information indicating that Ford was aware that other manufacturers had launched recalls for defects like those that could affect the DPS6 transmission. In a January 21, 2009 email, Mr. Kirchhoffer shared a Daimler Trucks recall of 2,426 Thomas Built Buses, in which the automatic transmission control module could become corroded due to water and road spray intrusion, causing the starter motor to engage unexpectedly or the backup lights to operate intermittently.[39]

---

[37] 2014-15 Ford Sustainability Report.
[38] VGS20130916; 6-Sigma Center Survey Request Form; Ford Motor Company; July 18, 2013.
[39] VGS5-00021665; RE: MAM - Interface FMEA Summary+ SEV Reduction Process (YC Reduction Process) - Reclassified for 'Loss of Drive'; Johann Kirchhoffer; Ford Motor Company; January 21, 2009.

286.    Mr. Kirchhoffer reminded his colleagues how severity levels assigned on the FMEA related to field actions later:

> From the Campaign Prevention team and connecting to the CP DD2 I would like to share with you the attached information about a campaign/field service Action, concerning a TCU exposed to splash water and corrosion similar to the MAM on the DPS6. The Failure Modes affecting the Back Up Light and Cranking leading to 'Unexpected Vehicle Movement' or Traffic Irritation are affected. This is effecting item 2.1.2) - Back Up Light Function - from the Electrical FMEA and item 2.4) concerning the Mechanical FMEA, failure modes leading to the back up light electrical malfunction. This an additional awareness item with respect to the YC classifications isolated under items 2.1.2 and 2.4![40]

287.    Ford employees also discussed how to go about repairing vehicles with DPS6 Transmission Defects using protocols that would not violate the TREAD Act. Thus, Ford demonstrated its knowledge that customer complaints and warranty claims are reportable events.

288.    In an internal September 6, 2016 email string, Craig Renneker, the Ford Chief Engineer for Front-wheel-drive A/T & D/l Systems Transmission & Driveline Engineering, discussed fixing the clutch in a DPS6 transmission of a Detroit school teacher who had complained about the problems with his new Focus to a former Ford employee, now a reporter with Crain Communications. Renneker warned that the company protocol must be followed to avoid a TREAD Act violation: "Yes - this is a concern (TREAD Act), which is why we need to follow the FCSD "VIP Ticket" process. Please call Paul S. directly to coordinate.[41]

289.    In another Ford internal email string dated May 24, 2017, Mr. Renneker discussed fixing a DPS6 clutch for a customer out of warranty:[42]

---

[40] VGS5-00021665; RE: MAM - Interface FMEA Summary+ SEV Reduction Process (YC Reduction Process) - Reclassified for 'Loss of Drive'; Johann Kirchhoffer; Ford Motor Company; January 21, 2009.

[41] Ford DPS6-SAC 00038320; RE: Hey, Bob ... (Rich Truett email on 2015 DPS6 Focus); Craig Renneker; Ford Motor Company; September 6, 2016.

[42] Ford-DPS6-SAC 00054061; Subject: RE: Replacing transmission on out-of-warranty vehicle for engineering feedback; Craig Renneker; Ford Motor Company; May 24, 2017.

Mike;

She has an 8080 clutch installed at 80k miles. Replacing hers with an 8040 will give us a "picky customer" data point to check the efficacy of the new material. Are you saying that the 8080 clutch replaced under the FSA itself has a 2 year/24 month warranty that would cover the full cost (parts and labor) to give her a new 8040? She is specifically complaining about the judder, but believes that there is nothing else the dealer can do. If the warranty does NOT cover her, do we have an approved procedure for an engineering investigation to replace her clutch/trans with engineering$? I'm mindful of TREAD act.

Guys;

Thanks. Please don't pull the trigger on this yet. I've had 5 notes back/forth between me and the FCSD Director. I want to take care of this, but need to do it EXACTLY the right way. I hope to be able to give clear direction yet today. They have another funding mechanism that may be a better path as this has senior executive attention.

290.    In at least one instance, Ford engineers actively discussed how to avoid triggering government attention that might lead to a recall. In a Ford internal email string dated March 4, 2013, Ford engineers discussed yet another emerging defect issue involving the DPS6's transmission in which the shift drums failed to achieve proper referencing:

On every start-up the shift drums will move to the end stop and confirm position. This is done for safety reasons as the control system needs to know the exact position of the synchros to prevent an unintended movement. The failure to achieve proper reference is usually caused by low system voltage during crank (low voltage can either inhibit the driving force of the shift drum), it could also indicate a motor problem or a mechanical blockage…As a result of the continuous learnings, there have been multiple changes to fine tune the referencing sequence to stagger the shift drum movement so that the system voltage has recovered from the engine start. Whenever the transmission fails to achieve the reference position it sets an internal code (P2832 or P2837) and temporarily disables the gears which did not reference correctly.[43]

291.    In response, Ford DPS6 Transmission Manager, Christopher Kwasniewicz, noted that Ford was about to release a TSB for transmission shudder, which would require a software re-flash the calibration, even though it might set error codes that would send the customer back to the

---

[43] VGS20020225; RE: P2832 & P2837 Background Info On Shift Drum Reference; Piero Aversa; Ford Motor Company; March 2, 2013.

190

dealer. This situation was preferable to dealership techs replacing clutches, which was costing Ford $3 million a month in warranty costs.[44]

292.    Indeed, Ford had cast the DPS6 transmission's myriad of failures as a design problem, owned by Getrag.[45] And trying to fix the problems had been enormously expensive for Ford.

293.    In a March 10, 2014 letter to Getrag, Ford's Global Director, Powertrain Installation Purchasing, Alan Draper, noted that fixing the leaking input shaft seals alone would cost Ford hundreds of millions of dollars:

> After considerable technical analysis into the DPS6 seal leak concerns, Ford has determined that the appropriate remedy for affected vehicles is to initiate two separate customer satisfaction actions aimed at maintaining confidence in vehicles equipped with DPS6 transmissions built prior to the incorporation of the shaft seal material change in 2013.
>
> 1.    Proactive seal repair of 856K DPS6 equipped vehicles
> 2.    Extended warranty for 1.4M DPS6 equipped vehicles (including vehicles campaigned for the proactive seal repair)
>
> The initiation of these actions along with the corresponding customer notification is pending completion of a robust service part supply plan. Getrag's support of this plan is recognized, and I ask for your team's continued help as we work to finalize the details. At this time, we are forecasting that these actions alone will cost us over $650M through the 2019 calendar year in addition to our normal warranty coverage.[46]

294.    Ford knew from years of experience of working with the NHTSA that the agency tended to evaluate the recall potential for a defect that caused an engine stall or a loss of motive power, based on whether the particular condition gave the driver any warning of the impending stall and whether the driver could quickly recover motive power.

---

[44] VGS20020225; RE: P2832 & P2837 Background Info On Shift Drum Reference; Chris Kwasniewicz; Ford Motor Company; March 2, 2013.

[45] VGS21355122; FW: DPS6 Getrag Status Update; Allyson Waldman; Ford Motor Company; March 24, 2014.

[46] VGS20415045; Alan Draper Letter; Ford Motor Company; March 10, 2014.

295.   The NHTSA's position has its roots in a 1986 study commissioned by the U.S. Department of Transportation Research and Special Programs Administration. The Transportation Systems Center issued a report which attempted to identify "patterns which could yield insight concerning the safety implications of stalling," "high-risk stalling situations;" and "high-risk vehicles/components."[47] The researchers looked at complaints, calculated crash rates and compared these data to a sample of investigations which resulted in recalls or were closed with no findings. The researchers also analyzed a sample of the crash reports "to determine which vehicle characteristics and stalling circumstances were related to serious safety problems."[48]

296.   The researchers concluded that stalling incidents that occur without warning, at high speeds, or upon acceleration are associated with stalling-related accidents more frequently than other types of stalling problems. For example, loss of power steering or brakes due to stalling is cited as a common accident cause.[49] In cases of a total loss of control, nearly half were involved in accidents. In addition, the 4.8 percent of drivers who had no warning of the stalling incident before it occurred were involved in accidents approximately 13 times more other than those who had some warning prior to their stalling incident.[50]

297.   With that in mind, Ford worked assiduously to avoid fulfilling its recall responsibilities, by persuading NHTSA that drivers who experienced a loss of motive power due to the solder crack issue in the MAM could quickly recover.[51] And, rather than recall and replace

---

[47] Analysis of Stalling Problems; Simon Prensky; Pg. ii; U.S. Department of Transportation Research and Special Programs Administration Transportation Systems Center; November 1986.

[48] Analysis of Stalling Problems; Simon Prensky; Pg. ii; U.S. Department of Transportation Research and Special Programs Administration Transportation Systems Center; November 1986.

[49] Analysis of Stalling Problems; Simon Prensky; Pg. ii; U.S. Department of Transportation Research and Special Programs Administration Transportation Systems Center; November 1986.

[50] Analysis of Stalling Problems; Simon Prensky; Pg. ii; U.S. Department of Transportation Research and Special Programs Administration Transportation Systems Center; November 1986.

[51] VGS5-00365439; Re: Request for Confidential Treatment of Information Pertaining to a Recent WebEx Presentation, November 19, 2017.

the defective clutches, or buy back the vehicles, Ford engineers proposed a $1.5 million project to "develop and test a software strategy that provides early warning to the customer (Overt Detection) prior to a MAM concern that may result in the loss of motive power."[52]

298.    Among the benefits outlined were a faster implementation of a software reflash of the MAM, avoiding customer dissatisfaction because drivers would have time to "schedule MAM replacement at the dealer, prior to MAM concern that has the potential to leave them stranded," and reduce costs by spreading the demand for MAM replacements over time.[53] Finally, the proposal noted that an overt detection strategy would "satisfy NHTSA - Overt Detection is a pro-active action to protect our customers, which will more easily satisfy NHTSA's requirements."[54]

299.    This latter idea was also expressed in Ford communications regarding its presentation to the Australian government probing the failures of the DPS6. On March 8, 2017, Mariusz Czubek, a specialist with the Ford AP Warranty Spend Reduction Group, contacted Ford Engineer Jonathan Graves of the DPS6 Transmission group for information to aid his analysis on the effectiveness of the new software re-flash under Customer Satisfaction Campaign 15B221 which caused a warning light "to come up and hopefully prevent them 'getting stuck.'"[55] In reply, Mr. Graves noted: "15B22 was released to satisfy NHTSA recall requirements and updates each vehicle to Overt Software for early detection of solder cracks."[56]

300.    In its reply to the NHTSA's information request, Ford was prepared to stake its position against a recall on the argument that other systems, such as noting that the brakes and

---

[52] VGS7-0059304 Overt Detection and Early Warning of DPS6 Mechatronic Actuation Module (MAM) Issue. Ford Motor Company; 2014.
[53] VGS7-0059304 Overt Detection and Early Warning of DPS6 Mechatronic Actuation Module (MAM) Issue. Ford Motor Company; 2014.
[54] VGS7-0059304 Overt Detection and Early Warning of DPS6 Mechatronic Actuation Module (MAM) Issue. Ford Motor Company; 2014.
[55] DSP6-SAC 00050546; Subject: RE: MAM DTC fault code effect on customer; Mariusz Czubek March 10, 2017.
[56] DSP6-SAC 00050546; Subject: RE: MAM DTC fault code effect on customer; Jonathan Graves; March 10, 2017.

airbags and steering still worked, that there was a warning to the driver, and that new software would make the driver aware of the need for service before the cracks grew large enough to cause serious problems. According to a draft response, Ford officials noted:

Closing rationale -This should include:

- Because solder fatigue crack propagation is progressive in nature, associated warnings and drivability symptoms are progressive in nature, as well. Of customers that allege to have eventually lost mobility, the majority said they were able to regain mobility either immediately or within minutes by moving the shift lever or cycling the key.
- Other vehicle systems such as power steering, power brakes, restraint systems, electrical functions, etc. are unaffected
- Ford's extended warranty letter to customers highlights the vehicle symptoms associated with this condition, and provides financial coverage in order to encourage vehicle repair before the symptoms progress in nature.

## FORD HAS CONDUCTED SAFETY RECALLS AS TO DEFECTS THAT CAUSED STALLS VIRTUALLY IDENTICAL TO THE UNINTENDED NEUTRAL EVENTS THAT MAKE THE DPS6-EQUIPPED VEHICLES UNSAFE

301.    Ford is "on notice," due to its history of selling defective vehicles and regulatory enforcement actions and court proceedings, that it is legally required to recall vehicles that suffer from unintended neutral/loss of motive power/stall condition events.

302.    In the last 15 years, Ford has launched seven (7) such recalls – including four between 2012 and 2016, the same period in which Ford avoided recalls for unintended neutral/loss of motive power conditions caused by the DPS6 transmission.

303.    In 2003, Ford became the only automaker to issue a judicially ordered recall for a stalling condition, after two decades of failed NHTSA investigations. From 1982 to 1997, the NHTSA investigated ignition module failures, but Ford misled the agency for years about the causes of stalling (affecting multiple models and model years) with no consequences to the company. In the absence of accurate information from Ford, NHTSA's Office of Defect

Investigations ("ODI") was unable to identify the failure. Thus, the ignition defect bears the distinction of being the first court-ordered recall outside of the NHTSA.

304. The ignition module defect caused loss of power like that affecting the DPS6 equipped vehicles. Ford's ignition system[57] was heat-sensitive, yet Ford placed it in the hottest location under the hood; at certain temperatures the module would cut out, causing the vehicle to stall at highway speeds.[58] After four years, Ford's warranty data showed that the return rate far exceeded projections, but many of the returned parts did not exhibit the failure mechanism because, once cooled down, the component would resume working. Ford eventually identified the problem but failed to act on its knowledge.[59]

305. The NHTSA launched five investigations but could not definitively isolate a root cause of the stalling, in part because Ford withheld documents that would have shown the effect of thermal stress on the ignition modules resulted in stalling, instead of a range of drivability issues.

306. In 1987, the NHTSA examined the stalling issue in 2.6 million 1983 through 1986 Escort, Tempo, Mustang, LTD, Thunderbird, EXP, Cougar, Topaz, Capri, Merkur, Lynx and Marquis vehicles equipped with 1.6 liter or 2.3-liter engines. The NHTSA's Office of Defects Investigation investigated based on 33 stalling complaints; Ford located another 1,819 field reports and 649 complaints, but it combined different complaints into one pool of "failure to start the engine, poor engine performance and engine stalling."[60]

---

[57] The ''trouble not identified'' phenomenon in automotive electronics; Dawn Thomas, et al; Microelectronics Reliability; January 23, 2002.

[58] The ''trouble not identified'' phenomenon in automotive electronics; Dawn Thomas, et al; Microelectronics Reliability; January 23, 2002.

[59] The ''trouble not identified'' phenomenon in automotive electronics; Dawn Thomas, et al; Microelectronics Reliability; January 23, 2002.

[60] PE87-028; Opening Letter; National Highway Traffic Safety Administration; May 12, 1987.

307. Ford cast the DPS6 defect as a drivability issue: "As we have stated to the agency in the past, today's engine and emission system controls have become very intricate and the diagnoses of drivability and/or stalling conditions have likewise become very difficult."[61]

308. Both Ford and NHTSA conceded that the ignition module was to blame:

Clearly evident is the fact that Ford experienced a massive engine controllability problem with the introduction of a new thick film ignition module (TFI) in the 1.6 and 2.3 liter engines…Ultimately, Ford engineers identified the root cause of the problem to be thermal fatigue of the TFI ~ transistor assembly and integrated circuit failures which were aggravated by elevated engine compartment temperatures and by thermal cycling.[62]

309. But Ford misled the NHTSA about the scope of the problem and oversold its ability to resolve the issue.[63]

310. A class action lawsuit on behalf of Ford owners prompted the NHTSA to open a sixth investigation in 1997, which revealed that Ford had failed to produce documents to the agency. By then, the eight-year statute of limitations on recalls had passed, and the civil penalties the agency could have imposed were low.[64] In 1999, the lawsuit ended in a hung jury, but resulted in a judicially ordered recall. Ford eventually settled the litigation in 2003 by doubling the component's warranty.

311. Another recall also illustrates Ford's refusals to accept responsibility for loss of power problems. In April 2004, a NHTSA probe forced Ford to recall 321,903 2001-2003 Escape vehicles for a condition in which a fuel-rich mixture could cause the vehicles to stall during

---

[61] PE87-028; Closing Resume; National Highway Traffic Safety Administration; May 1, 1987; PDF pg. 11.
[62] PE87-028; Closing Resume; National Highway Traffic Safety Administration; May 1, 1987; PDF pg. 11.
[63] Howard v. Ford' Plaintiff's Opening Trial Brief; Phase Two; June 12, 2000.
[64] Lawsuit Asserts Ford Knowingly Installed Defective Mechanism in Millions of Vehicles; Tim Golden; The New York Times; September 6, 1997.

decelerations at speeds below 40 mph.[65] In its Part 573 Notice of Defect and Noncompliance, Ford argued that the vehicles were still controllable and re-started immediately:

> Ford's investigation found that the vehicles remained controllable after such engine stalls and can readily be maneuvered off the roadway. Further, the vehicles typically restart immediately, and some owners reported starting their vehicle without coming to a stop coming to a stop. While it may be argued that stalling under certain conditions may increase the risk to safely, the stalling characteristics in this population of vehicles do not pose an unreasonable risk of accident or injury. The reports in this investigation clearly bear this out. Ford does not by taking this action, admit that a safety defect exists in these vehicles nor does Ford believe that engine stalling presents an unreasonable risk to motor vehicle safety. Ford Believes that the agency should update its earlier study of engine stalling as a sequel to the earlier "Analysis of Stalling Problems," sponsored by The Transportation System Center.[66]

312.    In June 2005, Ford recalled 180,104 Ford F-SuperDuty, Excursion, and E-Series vehicles from the 2004-2005 model years, equipped with 6.0l diesel engines, for reported engine stalling to address two wiring related conditions, specifically that the FICM wire harness chafing or improper ICP sensor connector crimps could cause the vehicle to stall without warning, with no re-start.[67] Ford argued that the stalling hadn't caused any injuries or crashes:

> Ford's investigation has demonstrated that the reported stalling incidents in the affected vehicles do not present an unreasonable risk to safety. The vehicles remain controllable in the event of stalling. Real world performance, with virtually no accidents or injuries, supports our analysis. Nonetheless, to address customer satisfaction concerns and to avoid prolonged discussions with the agency, we are conducting this recall.[68]

313.    In January 2012, the NHTSA compelled Ford to recall 205,896 2004 and 2005 model year Ford Freestar and Mercury Monterey vehicles for problems that cause torque converter malfunctions and engine stalls. In its responses to an agency investigation, Ford laid out all of the same "controllability" arguments against a finding of a safety defect: According to Ford, the

---

[65] Recall 04V165; Notice of Defect and Noncompliance; Ford Motor Company; April 5, 2004.
[66] Recall 04V165; Notice of Defect and Noncompliance; Ford Motor Company; April 5, 2004.
[67] Recall 05V270; Notice of Defect and Noncompliance; Ford Motor Company; June 7, 2005.
[68] Recall 05V270; Notice of Defect and Noncompliance; Ford Motor Company; June 7, 2005.

vehicle "remains readily controllable; the vehicle will coast during which it can be safely maneuvered and stopped because the engine continues to run. Because the engine continues to run, steering and braking are unaffected, and the vehicle's electrical system and directional signals remain functional. Further, the transmission park system remains fully functional. At that time only one ambiguous, alleged minor accident involving a vehicle trailing behind the Freestar was identified with no alleged injuries."[69] Ford eventually launched a recall to "avoid a protracted dispute with the agency."[70]

314.    In October 2013, Ford recalled 2,456 Focus Electric vehicles (model years 2012-2014) for a failure of the Power Control Module. The defect caused "a sudden loss of motive power while driving, increasing the risk of a crash."[71] Drivers received warning in the form of "a red triangle indicator and the message 'Stop Safely Now' in the instrument cluster." Ford's Part 573 Recall Notice further stated that other safety-critical functions – "vehicle brake and steering systems will continue to operate normally and vehicle can often be restarted after going through a shutdown process."[72] According to the chronology Ford filed with its Part 573, Ford's Critical Concern Review Group initially wanted to pass off the issue as a customer satisfaction matter – despite 16 reports of "Focus Electric vehicles experiencing loss of mobility accompanied by a "Stop Safely Now" message in the instrument cluster." However, after the NHTSA opened a preliminary evaluation (PE13-031) into the issue as it affected 2012-2013 Focus Electric vehicles, the CCRG found additional reports and recommended a recall in October 2013.[73]

---

[69] Recall 12V006; Defect and Noncompliance Notice; January 9, 2012.
[70] Recall 12V006; Defect and Noncompliance Notice; January 9, 2012.
[71] Recall 13V523; Defect and Noncompliance Notice; October 21, 2013.
[72] Recall 13V523; Defect and Noncompliance Notice; October 21, 2013.
[73] Recall 13V523; Defect and Noncompliance Notice; October 21, 2013.

315.    In 2016, Ford recalled 865 Focus Electric vehicles (2015-2016 model years) because increased friction and excessive wear of a certain gear shaft could result in overheating and eventual fracture of the shaft or pinion gears. This could lead to loss of motive power while driving and loss of the transmission park function without warning, increasing the risk of a crash." Ford claimed it was not aware of any warranty reports, accidents or injuries related to the defect.[74]

316.    In August 2016, Ford recalled 77,502 2013-2015 Ford Taurus and 2013-2015 Ford Taurus Police Interceptor, Lincoln MKS and MKT vehicles, due to the malfunction of a component within the fuel Pump Electric Module (PEM) caused by elevated temperatures within the module. "Malfunction of the fuel PEM may result in an open circuit causing a loss of electrical power to the fuel pump. If this occurs, the customer may experience an engine no start or an engine stall. In some cases, the engine may stall without warning or the ability to restart."[75]

317.    In October 2018, Ford recalled more than 1.2 million 2012-2018 Ford Focus vehicles due to a malfunctioning Canister Purge Valve (CPV) that can stick open and a Powertrain Control Module (PCM) software that does not adequately detect a stuck-open CPV.[76] In its Defect and Noncompliance notice, Ford noted that a stuck CPV "can cause excessive vacuum in the fuel vapor management system, potentially deforming the fuel tank. If this occurs, the customer may observe a Malfunction Indicator Light (MIL), inaccurate or erratic fuel gauge indication, drivability concerns or loss of motive power."

318.    In the case of the DPS6 Transmission, as in those prior cases, Ford actively concealed from the NHTSA its knowledge about the extent of the safety-related problems, and about the total number of crashes and injuries associated with the multiple DPS6 Transmission

---

[74] Recall 16V479; Defect and Noncompliance Notice; June 27, 2016.
[75] Recall 16V621; Defect and Noncompliance Notice; August 22, 2016.
[76] Recall 18V735; Defect and Noncompliance Notice; October 22, 2018.

Defects. Ford took this course – not guided by engineering safety concerns – but out of political expediency with its supplier Getrag, and concerns about the enormous costs in delivering an effective repair or initiating a buyback program.

## FORD HAD EXCLUSIVE KNOWLEDGE OF THE TRANSMISSION DEFECTS AND FRAUDULENTLY CONCEALED THIS INFORMATION

319.   Ford had superior and exclusive knowledge of the Transmission Defects, and Ford knew or should have known that the Transmission Defects were not known or reasonably discoverable by consumers before purchase or lease of the affected Focus and Fiesta vehicles.

320.   Since at least 2010, Ford has known about the Transmission Defects through sources not available to consumers, including through Ford's pre-release testing data, early consumer complaints to Ford and its dealers about the Transmission Defects, testing conducted by Ford in response to those complaints, Ford's internal data showing high failure rates and replacement part sales, aggregate data from Ford dealers, and other Ford-proprietary sources of aggregate information about the problem including, but not limited to, similar defects in the substantially identical models sold overseas.

321.   Ford knew about, and as a matter of business practice, failed to disclose and concealed, the Transmission Defects present in the DPS6-equipped Focus and Fiesta vehicles, along with the Transmission Defects' dangerous safety and drivability problems, from consumers at the times of sale or lease, repair, and thereafter. In fact, instead of repairing defects in the DPS6, Ford frequently either refused to acknowledge the defects' existence or performed superficial and ineffectual software upgrades that simply masked the symptoms of the Transmission Defects.

322.   The existence of the Transmission Defects is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a vehicle equipped with a PowerShift Transmission.

323. Ordinary consumers reasonably expect that a vehicle's transmission is safe, will function in a manner that will not pose a safety hazard, and is free from manufacturing defects. Ordinary consumers further reasonably expect that a car manufacturer will not sell or lease vehicles with known safety defects, such as the Transmission Defects, and will disclose any such defects to its consumers when it discovers them. They would not expect Ford to fail to disclose the Transmission Defects to them and to continually deny the defect.

## FORD'S FAILURE TO DISCLOSE THE DPS6 DEFECTS

324. Ford has never disclosed the PowerShift Transmission Defects to consumers prior to their purchases or leases of affected vehicles, nor at any point during their ownership of such vehicles. Similarly, Ford never instructed its dealerships to disclose the PowerShift Transmission Defects to potential purchasers or lessees of vehicles equipped with the DPS6.

325. The PowerShift Transmission defect was not known or reasonably discoverable by ordinary consumers before purchase or lease, or without experiencing the defect firsthand and exposing themselves to an unreasonable safety risk.

326. Ford has remained silent publicly even as it issued service bulletins, conducted internal investigations, and witnessed the increasing failures of the DPS6 Transmission in its vehicles domestically and abroad.

327. Ford's refusal to publicly acknowledge the defect has created widespread confusion. Ford's failure to notify consumers, dealerships, or auto-technicians prevents PowerShift Transmission problems from being efficiently diagnosed. Drivers are led to believe that the problems they are experiencing are actually "normal characteristics" of the PowerShift Transmission. Likewise, the lack of information makes it less likely that dealerships and auto-

technicians will be able to diagnose and fix the PowerShift Transmission Defects or advise a consumer about the dangers of driving the affected vehicle.

328.    As a result of Ford's inaction and silence, consumers were entirely unaware that they had purchased, and were continuing to drive, an unsafe and unreliable vehicle. As Ford knows, a reasonable person would consider the PowerShift Transmission Defects important and would not purchase or lease a vehicle equipped with the PowerShift Transmission were its defects disclosed in advance or would pay substantially less for the vehicle.

**FORD ACTIVELY CONCEALED THE TRANSMISSION DEFECTS**

329.    As a result of the Transmission Defects, Ford was inundated with complaints regarding the PowerShift Transmission. In July 2011, Ford implemented a communications strategy intended to minimize certain behavior of the PowerShift Transmission in order to "improve customer expectations." In a memo with instructions sent to Ford dealers and service personnel, which Ford intended its dealers and service personnel to rely on in their communications to consumers, Ford noted that "PowerShift optimizes fuel efficiency with up to 40MPG and driving dynamic 'Fun to Drive' performance." It further noted, "The PowerShift is really like two 3-speed manual transmissions put together, with the freedom of operating a clutch as the components are controlled electronically. Since most of the components are derived from a manual transmission, the PowerShift transmission will drive, sound, or feel like a manual transmission only the driver does not have to shift gears."

330.    Some of the common and "normal characteristics" of the PowerShift Transmission were listed as "double clicking metal sounds … of gears shifting and synchronizers (similar to a manual transmission);" a "slight gear whine while slowing or coasting," and "a reverse trailer hitching feel (or a slight bumping feel) … at about 2MPH." Ford also advised its dealers about low speed grinding, reverse gear whine, and "Green Clutches" which can "lead to a rattle noise" and

"a take-off shudder /launch judder (shaky vs. smooth)." According to Ford, the shudder would become "progressively better … as the clutch breaks-in."[77]

331.    However, despite Ford's public insistence that these performance problems with the PowerShift Transmission were normal, in 2010 and 2011, Ford issued several TSBs to its dealers in the United States acknowledging defects in the PowerShift Transmission. Ford's TSB from September 2010, covering the 2011 Ford Fiesta, informs dealers how to address and attempt to repair the PowerShift Transmission in response to "concerns such as no engagement or intermittent no engagement in Drive or Reverse when shifting from Park to Drive or Reverse, grinding noise during engagement, and/or a check engine light with transmission control module (TCM) diagnostic trouble code…"

332.    Ford's TSB released on January 1, 2011, covering the 2011 Fiesta with the PowerShift Transmission, informs dealers of problems with the PowerShift Transmission causing "a loss of power, hesitation, surge, or lack of throttle response while driving."

333.    Ford's TSB from March 31, 2011, also covering the 2011 Ford Fiesta, informs dealers of problems where the PowerShift Transmission "exhibit[s] a rattle/grind noise in reverse only."

334.    Ford issued two separate TSBs in May 2011, both covering the Ford Fiesta. These TSBs addressed problems with the PowerShift Transmission including "concerns in Drive or Reverse when shifting from Park to Drive or reverse, no engagement, delayed engagement, intermittent engagement, noise during engagement…"

335.    Plaintiffs are informed and believe, and on that basis allege, another Ford TSB released in September 2011 advised dealers to reprogram the transmission computer if 2011 Fiesta

---

[77] VGS21630260, EFC000562DC, Ford Motor Company, July 25, 2011.

owners complained about "hesitation when accelerating from a low speed after coast down, harsh or late 1-2 upshift, harsh shifting during low-speed tip-in or tip-out maneuvers and/or engine r.p.m. flare when coasting to a stop."

336.    The 2012 Ford Focus was the subject of a Ford TSB in September 2011, which informed dealers of transmission problems including: "RPM flare on deceleration coming to a stop, rough idle on deceleration coming to a stop, intermittent engine idle fluctuations at a stop, intermittent vehicle speed control inoperative, intermittent harsh engagement/shift…"

337.    In December of 2011, Motor Trend magazine called these efforts by Ford a "stealth upgrade" and noted that while "[t]here's no official recall or service campaign… anybody who complains or requests an upgrade at the dealership can have their powertrain control computer re-flashed."

338.    Plaintiffs are informed and believe, and on that basis allege, the software upgrades recommended and encouraged by the various TSBs issued by Ford were completely ineffective at addressing the Transmission Defects.

339.    When consumers present vehicles equipped with the PowerShift Transmission to an authorized Ford dealer for repair to the transmission, rather than inform consumers of the Transmission Defects or conclusively repair the problem under warranty, Ford's dealers and authorized repair facilities either inform consumers that their vehicles are functioning properly, or perform superficial and ineffectual software updates that delay or mask the manifestation of the Transmission Defects in an attempt to avoid more comprehensive and expensive repairs or replacements under the warranty.

340. To this day, Ford still has not publicly acknowledged that the Powershift Transmission suffers from a systemic defect or defects, that cause(s) the transmission to malfunction.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, *ET SEQ.*(THE "MMWA")

341. The Georgia Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

342. Plaintiffs are "consumers" as defined in 15 U.S.C. § 2301(3).

343. Ford is a "supplier" and a "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

344. The Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1), because they are normally used for personal purposes and Plaintiffs in fact purchased them wholly or primarily for personal use.

345. The Vehicles were sold with a "written warranty" and/or a "service contract" as those terms are defined in 15 U.S.C. § 2301(6) and 2301(8), respectively.

346. As warrantor, Ford is required by the MMWA to remedy any Vehicle defect, malfunction or non-conformity within a reasonable time, within a reasonable number of repair attempts, and without charge to Plaintiffs. 15 U.S.C. § 2304(a)(1), (a)(4) and (d).

347. Ford failed to adequately repair transmission defects, which occurred during the time and mileage parameters of Ford's written express warranty (under both the original time and mileage limits of the transmission warranty and the extended time and mileage limits of the transmission warranty within a reasonable time and/or a reasonable number of repair attempts. Such conduct constitutes a violation of the MMWA.

348.    The MMWA grants Plaintiffs the right to bring a suit for damages and other legal relief against Ford for any breach of express or implied warranty arising under state law, as well as any violation of the MMWA. 15 U.S.C. §2310(d)(1).

349.    Under the MMWA, Plaintiffs are allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by Plaintiffs for or in connection with the commencement and prosecution of such action. 15 U.S.C. §2310(d)(2).

350.    Any purported disclaimer of implied warranties by Ford is prohibited by the MMWA and is invalid and unenforceable. 15 U.S.C. § 2308(a) and (c).

351.    Even though Plaintiffs have complied with all conditions precedent, and have performed all things agreed to and required of them under the purchase agreement and warranty, except as may have been excused or prevented by the conduct of Ford, Ford has failed and/or refused to remedy within a reasonable time, within a reasonable number of repair attempts, and without charge, the Vehicle's transmission defects, malfunctions, or non-conformities set forth in this Complaint.

352.    Ford is not entitled to another opportunity to cure the defects in the Vehicles. Plaintiffs have already given Ford notice of the defects and opportunities to correct the defects and Ford has failed, after numerous attempts, to cure the defects in the Vehicle. Furthermore, at the time of the sale or lease of each of the Vehicles to Plaintiffs, Ford knew, should have known, or was reckless in not knowing, of its omissions and/or misrepresentations concerning the DPS6 PowerShift Transmission's inability to perform as promised and warranted, but Ford failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies

206

available under any available informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or give Ford another opportunity to cure the defects has been waived by Ford or is otherwise excused and thereby deemed satisfied.

353.    Further, for the passenger vehicles for model years 2011-2016, Ford's express warranty booklet states that use of its informal settlement dispute procedure administered by the Better Business Bureau is optional, not mandatory:

## 2. Important information you should know

**IF YOU NEED CUSTOMER ASSISTANCE**

Your Ford Motor Company dealer is available to assist you with all your automotive needs. Please follow the procedures outlined on the front page of this booklet.

In addition, if you are an eligible U.S. owner, you may use - at no cost - the services of the BBB AUTO LINE program. For details, see Better Business Bureau (BBB) AUTO LINE program, page 33 or call 1-800-955-5100.

*See* Ford Warranty Booklet Excerpts. Therefore, any purported pre-suit submission to the BBB Auto Line program is not required. *See* 16 C.F.R. § 703(b)(3) and 16 C.F.R. § 701.01(j)(2).

354.    As a result of Ford's breaches of express and implied warranties, Ford's failure to remedy same within a reasonable time, a reasonable number of repair attempts, and without charge to Plaintiffs, and Ford's other violations of the MMWA, as set forth in this Complaint, Plaintiffs have suffered actual damages.

355.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. In fact, the amount in controversy of this action exceeds the sum of $50,000.00, exclusive of interest and costs.  Ford has judicially admitted that this Court has subject matter jurisdiction of this case and that the minimum amount in controversy has been met.

207

356.    The Georgia Plaintiffs seek all damages permitted by law, including, without limitation, compensation for the monetary difference between the Fraudulent Vehicles as warranted and as sold; compensation for the reduction in resale value; the cost of purchasing, leasing, or renting replacement vehicles, along with all other incidental and consequential damages, statutory attorney fees, statutory damages, punitive damages, pre-judgment and post-judgment interest and all other relief allowed by law.

**SECOND CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**

357.    The Georgia Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

358.    The Georgia Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Georgia at Ga. Code Ann. § 11-2-101 *et. seq.*

359.    Ford's advertisements and statements in written promotional and other materials contained broad claims amounting to a warranty that the Vehicle would be free from an inherent risk of failure or latent defects that would plague the Vehicle.  Each of the Georgia Plaintiff's purchase or lease of a vehicle was also accompanied by an express written warranty provided by Ford.  At the time of purchase, Ford provided a 3-year/36,000-mile Bumper-to-Bumper Warranty and a 5-year/60,000-miles powertrain warranty which included the transmission and the clutch. Ford's express warranties were part of the basis of the bargain.  Ford subsequently extended the transmission warranties to 7-years/100,000-miles for clutches and related hardware, and 10-years/150,000-miles for the transmission control module. Defendant also expressly warranted that they would repair and/or replace defects in material and/or workmanship free of charge that occurred during the new vehicle and certified pre-owned ("CPO") warranty periods.

360.    The Georgia Plaintiffs relied on Defendant's express warranties when purchasing

208

their Vehicles. Ford induced the Georgia Plaintiffs' acceptance of the Vehicles by agreeing, by means of the express warranty, to remedy, within a reasonable time, those defects which had not been or could not have been discovered prior to acceptance and, further, by Ford's failure to disclose the aforesaid Transmission Defects and/or Ford's active concealment of same.

361.   The Georgia Plaintiffs' Vehicles were not as warranted and represented in that the Vehicles have the Transmission Defect and exhibit the conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in Ford's possession. The Vehicles continue to contain defects which substantially impair the use and value of the Vehicles to the Georgia Plaintiffs. These defects and non-conformities could not reasonably have been discovered by the Georgia Plaintiffs prior to their acceptance of the Vehicles.

362.   As a result of the Transmission Defect in the Georgia Plaintiffs' Vehicles, the Georgia Plaintiffs' Vehicles cannot be reasonably relied on by the Georgia Plaintiffs for the ordinary purpose of providing safe, reliable, and efficient transportation.

363.   Defendant breached this warranty by selling to the Georgia Plaintiffs the Vehicles with known Transmission Defects, which are not of high quality, and which are predisposed to fail prematurely and/or fail to function properly. Ford has also breached its express warranties by failing to adequately repair the Vehicles and/or to repair the Vehicles within a reasonable amount of time or after a reasonable number of repair attempts, and the Vehicles remain in a defective condition.

364.   As a result of the Transmission Defect in the Georgia Plaintiffs' Vehicles, the Georgia Plaintiffs have suffered economic damages including, but not limited to, costly repairs, loss of use of the vehicle, substantial loss in value and resale value of the vehicles, diminished

209

value of the vehicle on the date of sale, and other related damage. The Georgia Plaintiffs have provided Ford with sufficient opportunities to repair or replace their Vehicles.

365. As a result of the transmission defects, the Georgia Plaintiffs have lost faith and confidence in the Vehicles and the Georgia Plaintiffs cannot reasonably rely upon the Vehicles for the ordinary purpose of safe, reliable and efficient transportation.

366. The limited or exclusive remedies of repairs or parts replacement in Ford' warranty failed of their essential purpose and deprived Plaintiffs of the substantial value of the bargain because Ford did not correct the defects within a reasonable time or within a reasonable number of repair attempts. Therefore, any purported limitation of remedies is ineffective, and all consequential damages are recoverable.

367. Ford's Warranty Provides:  Ford and your dealer are not responsible for any time or income that you lose, any inconvenience you might be caused, the loss of your transportation or use of your vehicle, the cost of rental vehicles, fuel, telephone, travel, meals, or lodging, the loss of personal or commercial property, the loss of revenue, or for any other incidental or consequential damages you may have. Any such purported exclusion of consequential and incidental damages is unconscionable and therefore unenforceable. Specifically, Defendant's warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the defect.

368. The Georgia Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty that accompanied their Vehicles, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

369. The Georgia Plaintiffs seek all damages permitted by law, including, without limitation, compensation for the monetary difference between the Fraudulent Vehicles as

warranted and as sold; compensation for the reduction in resale value; the cost of purchasing, leasing, or renting replacement vehicles, along with all other incidental and consequential damages, statutory attorney fees, statutory damages, punitive damages, pre-judgment and post-judgment interest and all other relief allowed by law.

## THIRD CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

370. The Georgia Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

371. The Georgia Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Georgia at Ga. Code Ann. § 11-2-101 *et. seq.*

372. Defendant is a "merchant" with respect to motor vehicles under the Georgia statute.

373. Defendant impliedly warranted that the Vehicles, which Defendant designed, manufactured, and sold through its authorized dealer, were merchantable, that is, fit for ordinary purposes, including providing reliable and safe transportation.

374. Unfortunately, the Vehicles were of substandard quality and contained numerous latent defects at the time of purchase, including but not limited to transmission defects such as shifting erratically, and causing bucking, kicking, jerking, harsh engagement, delayed acceleration, lurching, erratic shifting, and a delay in downshifts, all of which have required multiple attempts to repair these defects. Because of these numerous defects, the Vehicles were and are not fit for their ordinary and intended purpose of providing reliable and safe transportation, and have caused economic loss to the Georgia Plaintiffs.

375. Defendant breached the implied warranty of merchantability, as the Vehicles were not of a merchantable quality due to the Transmission Defect. The Vehicles were not fit for the ordinary purpose for which such goods are used and/or the Vehicles would not pass without

objection in the trade for the product description.

376.   Ford failed to adequately remedy the transmission defects in the Vehicles within a reasonable time, and the Vehicles continue to be in an unmerchantable condition at the time of filing this Complaint. Because of the sheer number of defects in the Vehicles, and Defendant's failure to repair or replace the covered defective parts during the applicable warranty period in a manner which corrected the defects, the Vehicles are unfit for their ordinary purpose of providing reliable transportation and would not pass without objection in the auto trade due to the excessive defects.

377.   As a result of Ford's breaches of implied warranties, the Georgia Plaintiffs have suffered economic loss and damages. The damages the Georgia Plaintiffs have suffered are a direct and proximate result of Defendant's actions.

378.   The Georgia Plaintiffs have reasonably met all obligations and pre-conditions under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

379.   The Georgia Plaintiffs seek all damages permitted by law, including, without limitation, compensation for the monetary difference between the Fraudulent Vehicles as warranted and as sold; compensation for the reduction in resale value; the cost of purchasing, leasing, or renting replacement vehicles, along with all other incidental and consequential damages, statutory attorney fees, statutory damages, punitive damages, pre-judgment and post-judgment interest and all other relief allowed by law.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(GA. CODE. ANN § 10-1-370 ET SEQ.)**

380.   The Georgia Plaintiffs incorporate by reference all facts and allegations set forth in

this Complaint.

381. Georgia's Uniform Deceptive Trade Practices Act (Georgia UDTPA) prohibits "deceptive trade practices," which include "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have"; "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another"; and "[a]dvertising goods or services with intent not to sell them as advertised." GA. CODE ANN. § 10- 1-393(b). Defendants' aforementioned conduct violated this statute.

382. Defendant and the Georgia Plaintiffs are "persons" within the meaning of GA. CODE ANN. § 10-1-371(5).

383. Ford violated the Georgia UDTPA as a result of its manufacture and sale of vehicles with Transmission Defects, which Ford failed to adequately investigate, disclose and remedy, and its misrepresentations and omissions regarding the safety and reliability of these vehicles, which had the tendency or capacity to mislead. By failing to disclose and by intentionally concealing the Transmission Defects and the true defective nature of its PowerShift transmission system, by marketing its vehicles as safe, reliable, easily operable, efficient, and of high quality and standard, and protected by Ford's warranty, Ford knowingly and intentionally misrepresented and omitted material facts and breached its legal duties.

384. Defendant's unfair and deceptive acts or practices occurred repeatedly, systematically and continuously in Defendant's business of manufacturing, distributing, and advertising the sale of vehicles, were capable of deceiving, and did in fact deceive, a substantial portion of the purchasing public, including the Georgia Plaintiffs, and imposed a serious safety risk on the public.

385. Defendant knew that the Vehicles and their transmissions suffered from an inherent

defect, were defectively designed or manufactured, and were not suitable for their intended use of providing reliable transportation. In the course of Defendant's business of manufacturing, distributing, and advertising the sale of vehicles, Ford failed to disclose and actively concealed the Transmission Defect in the Vehicles as described above.

386. Ford engaged in the following violative acts or practices in the conduct of trade or commerce:

a. Representing through its advertising, warranties, and other express representations that the Vehicles, specifically that the transmissions in the Vehicles, had benefits or characteristics that they did not actually have;

b. Representing that the Vehicles, specifically that the transmissions in the Vehicles, were of a particular standard or quality when they were not;

c. Advertising the Vehicles and in particular the Vehicles' transmissions with the intent not to sell them as advertised and, when so doing, concealing and suppressing facts material to the true characteristics, standards and qualities of the Vehicles and transmissions;

d. At the time of the sales or leases to the Georgia Plaintiffs, Ford knew or had reason to know that the Vehicles had inherent and systemic Transmission Defects, as described in this Complaint, but Ford failed to disclose this material information to the Georgia Plaintiffs;

e. Failing to reveal material facts which misled Plaintiffs and which facts could not reasonably have been known by the Georgia Plaintiffs;

f. Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;

g.      Failing to provide promised benefits under the warranty, both expressly or implied by operation of law;

h.      Entering into a consumer transaction in which the Georgia Plaintiffs purportedly waived a right, benefit, or immunity provided by law, without clearly stating the waiver and obtaining the Georgia Plaintiffs' specific consent to the waiver.

387.    Ford's violative practices were specifically designed to induce, and did in fact induce, the Georgia Plaintiffs to purchase or lease their Vehicles with the "next-generation" DPS6 PowerShift transmission.

388.    The Georgia Plaintiffs reasonably relied on Defendant's material misrepresentations and omissions concerning the Vehicles, and their transmissions.

389.    Upon information and belief, these violations were not due to a bona fide error, as Ford failed to have any procedures in place designed to prevent the violations, and engaged in the same unfair and deceptive acts or practices in connection with the sale or lease of numerous other vehicles. Ford continued to engage in these unlawful practices until it manufactured its last vehicle with a DPS6 transmission in 2019.

390.    As a direct and proximate result of Defendant's unfair or deceptive acts or practices, the Georgia Plaintiffs have suffered and will continue to suffer actual damages, including economic damages at the point of sale or lease and/or diminished value of their Vehicles.  Had the Georgia Plaintiffs known that the Vehicles would be equipped with a characteristically defective transmission or exhibit the Transmission Defects, they would not have purchased or leased the Vehicles or would have paid substantially less to purchase or lease them.

391.    As a result of the Transmission Defects, the Georgia Plaintiffs were harmed and suffered actual damages in that the Vehicles' transmissions have failed or are highly likely to fail

before their expected useful life has passed.  The Vehicles experienced and will continue to experience transmission slips, kicking forward, shudder, jerking, increased stopping times, premature internal wear, delayed acceleration, and, eventually, transmission failure. The Georgia Plaintiffs have also experienced and will continue experience repair costs as a result of the Transmission Defect.

392.    The Georgia Plaintiffs are entitled to recover, and hereby sue Defendant for, actual damages, plus attorney's fees and expenses of litigation per Ga. Code Ann. § 10-1-399(d) plus exemplary damages (for intentional violations) per Ga. Code. Ann. § 10-1-399(a).  The Georgia Plaintiffs also sue Defendant for any other just and proper relief available under Georgia UDTPA per Ga. Code. Ann. § 10-1-399.

## LIMITATIONS

### PLAINTIFFS' CLAIMS ARE TIMELY UNDER LAW OR EQUITY

**ALL STATUTES OF LIMITATIONS ARE TOLLED BY THE TOLLING DOCTRINE ESTABLISHED IN *AMERICAN PIPE & CONSTRUCTION CO. V. UTAH,* 414 U.S. 538 (1974) AS A RESULT OF THE CLASS ACTION *VARGAS V. FORD MOTOR COMPANY***

393.    Plaintiffs gave timely notice of their claims against Ford in the present action as putative class members in a class action, *Vargas v. Ford Motor Company*, United States District Court, Central District of California, Case No. 2:12-cv-08388 ABC (FFMx), which was filed on September 28, 2012. That action was filed within three years of the date of purchase or lease for all Plaintiffs.

394.    There is no prejudice to Ford in gathering evidence to defend against Plaintiffs' individual claims because the class definition in the class action complaint within which Plaintiffs were each putative class members and the allegations in the class action lawsuit, *Vargas v. Ford Motor Company*, United States District Court, Central District of California, Case No. 2:12-cv-08388 ABC (FFMx) ("*Vargus*"), put Ford on notice of the facts that give rise to each Plaintiff's

216

individual action, the witnesses necessary for Ford to defend Plaintiffs' individual actions, and the causes of action against Ford asserted in each Plaintiff's individual action.

395.    *The Vargas Class Plaintiffs* alleged the material facts on behalf of Plaintiffs as putative class members as are being alleged by Plaintiffs in the present individual action.

396.    The facts alleged in *Vargas* are substantially similar, if not identical to the facts alleged herein.

397.    The allegations in *Vargas* are based on the same subject matter and similar evidence as the instant complaint. Those allegations concern the same evidence, memories, and witnesses as the subject matter in the instant complaint.

398.    The *Vargas* class action certainly protected the efficiency and economy of litigation because that class action is protecting the rights of thousands of consumers nationwide through a single action. Consumer class actions regarding defective vehicles brought against manufacturers are regularly certified, making a class action lawsuit an efficient means of pursuing such claims.

399.    The tolling of Plaintiffs' individual statute of limitations encourages the protection of efficiency and economy in litigation as promoted by the class action device, so that putative class members would not find it necessary to seek to intervene or to join individually because of fear the class might never be certified or putative class members may subsequently seek to request exclusion.

400.    The running of all statute of limitations on each Plaintiff's claims asserted against Ford in the present action were therefore tolled by *American-Pipe* tolling during the entire pendency of *Vargas*.

217

**PLAINTIFFS' CLAIMS WERE TOLLED DURING THE PENDENCY OF *CYR V. FORD MOTOR COMPANY*, CASE NO. 2017-006058-NZ (CIR. CT WAYNE COUNTY, MICHIGAN)**

401.    Plaintiffs previously timely filed their claims on April 20, 2017, in the case of *Cyr v. Ford Motor Co.*, Case No. 2017-006058-NZ (Cir. Ct Wayne County, Michigan) (hereinafter, "the *Cyr* Action"). On April 26, 2022, the *Cyr* Action was dismissed on the basis of *forums non conveniens*, which has at its core, the requirement that an alternate forum exists for Plaintiffs to pursue their claims. The statute of limitations was tolled during the pendency of the *Cyr* Action. Plaintiffs also invoke the Delaware savings statute and any other applicable savings statutes in re-filing their claims in the instant action.

## DEMAND FOR JURY TRIAL

402.    Pursuant to Rule 28(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court award relief as follows:

A.    Damages for the monetary difference between the Vehicles as warranted and as sold; compensation for the reduction in resale value; the cost of purchasing, leasing, or renting replacement vehicles, along with all other incidental and consequential damages;

B.    Statutory damages;

C.    Treble damages;

D.    Punitive or exemplary damages;

E.    Out of pocket damages;

F.    Costs of suit;

218

G.      Attorney's fees incurred in pursuit of Plaintiffs' claims against Ford, including trial

and appeals;

H.      Pre-judgment and post-judgment interest; and

I.      All other relief to which they may be justly entitled.

Dated: June 17, 2022

Respectfully submitted,

/s/ Antranig Garibian
Antranig Garibian, Esquire (Bar No. 4962)
**GARIBIAN LAW OFFICES, P.C.**
1010 N. Bancroft Parkway, Suite 22
Wilmington, DE 19805
Tel. (302) 722-6885
Email: ag@garibianlaw.com

*/s/ Eric D. Pearson*
Eric D. Pearson
Texas State Bar No. 15690472
eric@hop-law.com
Charles E. Miller
Texas State Bar No. 276523
California State Bar No. 276523
charles@hop-law.com
John W. Pate
Texas State Bar No. 24040092
john@hop-law.com
**HEYGOOD, ORR & PEARSON**
6363 N. State Highway 161, Suite 450
Irving, Texas 75038
Telephone: (214) 237-9001
Facsimile: (214) 237-9002

Craig Patrick
Texas State Bar No. 00792743
California State Bar No. 255849
craig@patricklaw.com
**PATRICK LAW FIRM, P.C.**
6244 E. Lovers Ln.
Dallas, TX 75214
Telephone: (214) 390-3343

219

Kenneth A. Stern
Michigan Bar No. P30722
ken@sternlawonline.com
STERN LAW, PLLC
41850 West Eleven Mile Road, Suite 121
Novi, MI  48375-1857
Telephone: (248) 347-7315

**ATTORNEYS FOR PLAINTIFFS**

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

*/s/Eric D. Pearson*
Eric D. Pearson

220